Mary **ANDREWS**, In Her Official Capacity as Civil Service Director of The City of Lubbock, Texas, and as Managing Director of Human Resources for the City of Lubbock, Texas; Ken Walker, In His Official Capacity as Chief of Police of The City of Lubbock, Texas; And The City Of Lubbock Texas, Appellants,

v.

Eric M. **WILSON**, Appellee.

No. 07–97–0104–CV.

Court of Appeals of Texas, Amarillo.

Jan. 6, 1998.

Rehearing Overruled Feb. 5, 1998.

Crenshaw Dupree & Milam LLP (William J. Wade and Cecil Kuhne), City of Lubbock (Anita Burgess and Jeff Hartsell), Lubbock, for appellants.

Combined Law Enforcement Association of Texas (Richard W. Carter and Terry M. Daffron) Fort Worth, Dan Morales, Attorney General of Texas (Jorge Vega, LaQuita A. Hamilton, Toni Hunter, Blake O. Brodersen,

Assistant Attorney Generals), Wiseman Durst Tuddenham & Owen PC (Martha P. Owen), Austin, for appellee.

Before BOYD, C.J., and QUINN [1] and REAVIS, JJ.

REAVIS, Justice.

Mary Andrews, in her official capacity as Civil Service Director of the City of Lubbock, and as Managing Director of Human Resources of the City of Lubbock; Ken Walker, in his official capacity as Chief of Police of the City of Lubbock; and the City of Lubbock (collectively the City), appeal from a summary judgment rendered in a declaratory judgment action in favor of police officer Eric M. Wilson (Wilson). The judgment declared that (1) section 143.057 of the Texas Local Government Code (Vernon 1988) [2] is in force and effect in the City of Lubbock; (2) section 143.057 is valid and constitutional; and (3) the City is obligated to proceed with the selection of a hearing examiner pursuant to the provisions of section 143.057. Based upon the rationale expressed, we reverse the summary judgment and render judgment for the City.

The summary judgment evidence establishes that Wilson was suspended for ten (10) days without pay for allegedly exercising unnecessary violence against a restrained prisoner. Instead of an appeal to the Fire Fighters' and Police Officers' Civil Service Commission under section 143.053, Wilson timely gave his notice electing to appeal to a "qualified" and "neutral" examiner selected from a list of seven candidates provided by the American Arbitration Association (AAA) or the Federal Mediation and Conciliation Service (FMCS). See section 143.057(d). Under section 143.057(d) a list of seven candidates is submitted to the officer and the department head. If, after receiving the list, the officer and the department head do not agree on one of the candidates, each party alternately strikes a name from the list and the last name remaining is the hearing examiner.

After Wilson elected to appeal his suspension to a private hearing examiner, the City commenced this action for declaratory judgment and filed a motion for summary judgment. The Texas Attorney General filed a response to the motion and a cross-motion for summary judgment which was adopted by Wilson. The three motions raised the following issues: (1) whether section 143.057 is in force and effect in the City of Lubbock; (2) whether section 143.057 is invalid and unconstitutional; and (3) whether the City was obligated to proceed in the selection of a hearing examiner in this case under the provisions of section 143.057. After a hearing on the motions, the trial court denied the motion of the City and granted the motions of the Attorney General and Wilson. The trial court expressly determined that section 143.057 is in force and effect in the City of Lubbock; that section 143.057 is valid and constitutional; and, that the City is obligated to proceed with the selection of a hearing examiner under the provisions of section 143.057.

By five points of error, some of which were presented and determined by this Court in *Andrews v. Proctor*, 950 S.W.2d 750 (Tex. App.—Amarillo 1997, writ pending), the City seeks reversal of the summary judgment contending that (1) the trial court erred in finding that section 143.057 is in force and effect in Lubbock; (2) section 143.057(d) is unconstitutionally vague, indefinite, and meaningless because it does not provide definitions or guidelines for the terms "qualified" or "neutral"; (3) section 143.057(d) is invalid and unconstitutional because it confers legislative authority on a private entity and fails to provide guidelines to the AAA or the FMCS in determining whether examiners are "qualified" and "neutral" under the statute and leaves such determination to such private entities on an ad hoc basis; (4) section 143.057 is invalid and unconstitutional because it inherently tends to create a bias

---

1. Justice Quinn joins in the outcome but only for the reasons expressed by the majority in response to point of error five.

2. All references to chapter 143, section 143.057, or other sections of chapter 143, are to the Texas Local Government Code Annotated (Vernon 1988).

on the part of hearing examiners in favor of the police officer depriving the municipality of due process and equal protection of the law; and (5) that because Lubbock is a home rule city, the statute is invalid because a municipality cannot surrender or be compelled to surrender its governmental functions except by a specific constitutional provision and the authority to direct, control, and discipline its police officers in the performance of their duties is a governmental function. By their reply points, Wilson and the Attorney General oppose the view presented by the City and also attack its standing to challenge the constitutionality of the statute.

### Standard of Review

When, as here, both parties move for summary judgment, each party bears the burden of establishing its entitlement to judgment as a matter of law. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993). If the trial court grants one summary judgment and denies the other, the appellate court may render the judgment the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

■ When the constitutionality of a statute is challenged, we begin our review with a presumption of validity, *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983), and the burden is on the party attacking the statute to establish its unconstitutionality. *Texas Public Bldg. Authority v. Mattox*, 686 S.W.2d 924, 927 (Tex.1985); *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex.1974). Moreover, in construing a statute, we presume that: (1) compliance with the constitutions of this State and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. Tex. Gov't Code Ann. § 311.021 (Vernon 1988).

■ As we did in *Proctor*, we first consider the City's standing to challenge section 143.057 as invalid and unconstitutional as raised by its second and fourth points of error. In *Proctor*, noting the general rule that a municipality, county or other public corporation, or governmental agency or other

political subdivision is not a "person" within the meaning of the Bill of Rights' due course of law, equal rights, and privileges and immunities guaranteed by the Texas Constitution and similar rights provisions of the United States Constitution, we overruled similar challenges. 950 S.W.2d at 752. Adhering to our decision in *Proctor*, we overrule points of error two and four.

■ By point of error one, the City contends the trial court erred in holding that section 143.057 is in force and effect in Lubbock because its citizens have not voted in a municipal election to adopt chapter 143, as required by section 143.004. The City also contends that its Firemen's and Policemen's Civil Service Ordinance, as passed and approved on February 26, 1948, is controlling. We disagree.

Chapter 143 is a recodification of the Fire Fighters' and Police Officers' Civil Service Statute, formerly Tex.Rev.Civ. Stat. Ann. art. 1269m, into the Texas Local Government Code. Prior to September 1, 1987, section 143.057 existed as article 1269m, section 16c. Because recodification indicates a legislative intent of the continuation of previously existing law, *Deep East Texas Reg. MHMRS v. Kinnear*, 877 S.W.2d 550, 562–63 (Tex.App.— Beaumont 1994, no writ), a second election by the voters of the City of Lubbock was not required to adopt chapter 143.

In *City of Sweetwater v. Geron*, 380 S.W.2d 550 (Tex.1964), the Court considered whether former article 1269m rendered an ordinance providing for mandatory retirement of all city employees at the age of sixty-five (65) invalid as to a police officer. The Court held that article 1269m did not apply because the ordinance applied to all employees and the police officer was not terminated for disciplinary reasons, but was terminated because of the new retirement policy. However, the Court concluded that:

> While the State *has pre-empted* the field for removal of firemen and policemen for *disciplinary reasons*, it has not by this Act pre-empted the field of maximum age limits for classified employees. (Emphasis added). *Id.* at 552.

In *Dallas Merchant's v. City of Dallas*, 852 S.W.2d 489, 491 (Tex.1993), the Court reaffirmed the rule that an ordinance of a home rule city that attempts to regulate a subject matter preempted by state statute is unenforceable to the extent it conflicts with the state statute.

Because Wilson's suspension was based upon a disciplinary reason, the trial court did not err in holding that section 143.057 was in force and effect. Point of error one is overruled.

■ By point of error three, the City urges that section 143.057 is invalid and unconstitutional because it confers legislative authority on a private entity in contravention of article III, section 1 of the Texas Constitution. We agree.

Specifically, the City asserts that section 143.057 fails to provide any guidelines to the AAA or FMCS in determining whether examiners are "qualified" and "neutral" under the statute and leaves such determination to such private entities on an *ad hoc* basis. This contention is similar to one of the arguments addressed by this Court in *Proctor*. Upon our consideration of this issue in *Proctor*, we determined that the City did have standing to challenge section 143.057 as an impermissible delegation of legislative authority. In disagreeing with the decision in *Blair v. Razis*, 926 S.W.2d 784 (Tex.App.—Tyler 1996, no writ), we held that section 143.057 was an unconstitutional delegation of legislative authority under article II, section 1 of the Texas Constitution. It is unnecessary for us to reexamine our decision in *Proctor*, and adhering to the holding, we sustain point of error three.

■ By point of error five, the City asserts that because it is a home rule city, Tex. Const. art. XI, § 5, it possesses full powers of self-government not inconsistent with the Constitution and general laws of the State of Texas. Then, it contends that, absent a specific constitutional provision, a home rule city cannot surrender or be compelled to surrender its governmental functions, but retains the authority to direct, control, and discipline its police officers. Although a similar issue was raised in *Proctor*, it was unnecessary to

our decision and therefore, we declined to consider it. However, because the Court considered similar issues in *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454 (Tex.1997), we address the question presented by the City's fifth point of error.

■ It is generally recognized that governmental or legislative functions of a municipality cannot be delegated to private entities. *Kousal v. Texas Power & Light Co.*, 142 Tex. 451, 179 S.W.2d 283, 285 (1944). In *City of Galveston v. Hill*, 519 S.W.2d 103, 105 (Tex.1975), the Court held that governmental functions vested in the discretion of the board of trustees by the city charter could not be surrendered, delegated or bartered away. Before *City of Galveston*, in *City of Crosbyton v. Texas–New Mexico Utilities Co.*, 157 S.W.2d 418, 420 (Tex.Civ.App.—Amarillo 1941, writ ref'd w.o.m.), this Court held:

> Functions such as the exercise of the police power by which it promotes or protects the general welfare, comfort and convenience of the people ... or enacts legislation under which the peace and good order of society is regulated, are governmental functions over which the governing body must retain exclusive control. These cannot be delegated nor bartered away and any effort to do so or any contract which has the effect of passing them to others or tying the city's hands so that it is impotent to change its policy in respect thereto is unconstitutional and void.

*See also Pittman v. City of Amarillo*, 598 S.W.2d 941, 945 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.), and *Gen. Tel. Co. of Southwest v. City of Perryton*, 552 S.W.2d 888, 891 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.), which hold that a municipality cannot, by contract or otherwise, transfer control of its governmental functions to another entity, absent specific constitutional authorization.

Section 143.057 creates an alternative review process for the discipline of officers engaged in a profession which demands a state of readiness, strict discipline, and a measure of obedience and valor not expected in ordinary callings. A police department

has a substantial interest in maintaining "discipline, *esprit de corps,* and uniformity" within its ranks so as to insure the safety of persons and property. Further, because of the paramilitary type of organization, a police department must be given considerably more latitude in its decisions regarding discipline and personnel regulations than the ordinary government employer. *Crain v. Board of Police Com'rs,* 920 F.2d 1402, 1409 (8th Cir. 1990).

Undoubtedly, under its police powers, a city has the power to maintain a police force. Moreover, the power to discipline officers is in the public interest and a city's power to discipline its officers is inherent and implied in its authority to maintain a police force. *See Barnett v. City of Plainview,* 848 S.W.2d 334, 339 (Tex.App.—Amarillo 1993, no writ), as applied to removal of a municipal judge. Further, the discipline or removal of a police officer is not for the purpose of punishment, but for the protection of the public. *Anderson v. Board of Civil Service Com'rs,* 227 Ia. 1164, 290 N.W. 493 (1940); *Mohr v. Civil Service Commission,* 186 Ia. 240, 172 N.W. 278 (1919).

Under section 143.053, Wilson had the right to appeal his suspension to the Fire Fighters' and Police Officers' Civil Service Commission, which is composed of three city residents appointed as provided by section 143.006. Upon considering an appeal, although the commission may deliberate its decision in a closed session, section 143.053(d) requires that any vote by the commission shall be in open session. Here, Wilson elected to appeal his suspension to a private, non-public hearing examiner as provided by section 143.057. Among other things, section 143.057 provides that the examiner's decision is final and binding on all parties, the examiner has the same duties and powers as the commission in conducting a hearing, and judicial review is limited to questions contending that the examiner was without jurisdiction or exceeded his jurisdiction or that the examiner's order was pro-

cured by fraud, collusion, or other unlawful means.[3] *See* § 143.057(c), (f), and (j).

Because the review provided by section 143.057 delegates the city's governmental or police power to an obviously private delegate, it is not necessary for us to conduct an analysis to determine whether the delegate is public or private as was done in *Texas Boll Weevil Eradication Foundation.* However, we will consider the eight factors applied by the Court in determining whether the private delegation was appropriate. 952 S.W.2d at 472.

**Factor one.** The examiner's actions are not subject to meaningful review by a state agency or other branch of state government because the act specifically makes the examiner's decision final, and judicial review is limited to lack of jurisdiction or fraud, collusion or other unlawful means.

\* \* \*

**Factor three.** The private delegate here would obviously be required to apply the law or rules to particular individuals.

\* \* \*

**Factor five.** The private delegate may, depending upon fact findings, impose a quasi-criminal sanction, i.e. the forfeiture of pay, similar to a fine.

\* \* \*

**Factor seven.** The statute does not set forth any special qualifications or training for the private delegate.

**Factor eight.** The statute does not establish any standards to guide the private delegate in its work.

Factors two, four, and six are not applicable and therefore, are not considered in our review. In addition to these factors, in the context of this particular statute, it is important to observe that the act does not require that the examiner be a resident of Texas and readily amenable to process for any breach of a duty, nor does the act require that the

3. Section 143.057(j) makes reference to "the arbitration panel." However, we note that this section does not provide for arbitration. *City of*

*League City v. Blevins,* 821 S.W.2d 212, 215 (Tex. App.—Houston [14th Dist.] 1991, no writ).

examiner be sworn to faithfully perform his duties. *Cf.* Tex. Civ. Prac. & Rem.Code Ann. §§ 64.021–.022 (Vernon 1997), requirements of residency and oath for the appointment of a receiver. Although the non-delegation doctrine should be used sparingly, we conclude that section 143.057 constitutes an overly broad delegation of the governmental functions and police power of the city to a private hearing examiner, and we sustain point of error five.

Accordingly, we reverse the judgment of the trial court and render judgment for the City on the basis that section 143.057 is unconstitutional as (1) an invalid delegation of legislative authority and (2) an improper delegation of the City's governmental functions and police power to a private delegate.