Eric WILSON, and John Cornyn, Attorney General OF Texas, Petitioners,

v.

Mary ANDREWS, in her official capacity as Civil Service Director of the City of Lubbock, Texas, and as Managing Director of Human Resources for the City of Lubbock, Texas, et al., Respondents

No. 98–0216.

Supreme Court of Texas.

Argued Oct. 12, 1999.

Decided Dec. 23, 1999.

---

Jonathan B. Morgan, Christopher Johnsen, B. Craig Deats, John Cornyn, Jorge Vega, Laquita A. Hamilton, Toni Hunter, David A. Talbot, Jr., Austin, Terry Daffron Putthoff, Richard W. Carter, Fort Worth, for petitioners.

Cecil Kuhne, Jeffrey C. Hartsell, Jean Shotts, Jr., Anita E. Burgess, William J. Wade, Lubbock, for respondents.

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice OWEN, Justice BAKER, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES join.

This case presents issues similar to those presented in *Proctor v. Andrews.*[1] In *Proctor,* we held that subsection 143.057(d) of the Texas Civil Service Act,[2] which authorizes arbitration of police officer and firefighter disciplinary disputes by a private "neutral qualified arbitrator," neither unconstitutionally delegates authority to a private entity under article III, section 1 of the Texas Constitution nor violates the home rule provision in article XI, section 5 of the Texas Constitution.[3]

In this case, which was decided by the court of appeals before we issued *Proctor,* the City of Lubbock asks whether its Firemen's and Policemen's Civil Service Ordinance 862 or subsection 143.057(d) governs its civil services. The answer to this question determines whether Lubbock's civil service employees can use the arbitration procedures subsection 143.057(d) provides. Because we conclude that the Civil Service Act and the subsequent amendments control, we agree with the court of appeals'

holding that subsection 143.057(d) governs Lubbock's civil service disciplinary matters.[4]

Lubbock also asserts that subsection 143.057(d) unconstitutionally delegates legislative authority to a private entity because it provides no guidelines to the entities that determine whether arbitrators are "qualified" and "neutral." Additionally, Lubbock asserted in the court of appeals that subsection 143.057(d) unconstitutionally infringes upon the home rule powers guaranteed under article XI, section 5. Although the court of appeals agreed with Lubbock,[5] we upheld subsection 143.057(d)'s constitutionality against these exact challenges in *Proctor,* which controls. Consequently, we reverse the court of appeals' judgment and reinstate the trial court's judgment for Wilson.

Lubbock Police Chief Ken Walker suspended officer Eric Wilson for ten days without pay for allegedly using excessive force on a prisoner. Chapter 143 of the Local Government Code allows a police officer to appeal a suspension to (1) the local service commission or (2) an independent third-party hearing examiner selected either by agreement or by alternate strikes from a list of seven "qualified neutral arbitrators" submitted by the American Arbitration Association (AAA) or the Federal Mediation and Conciliation Service (FMCS).[6] Wilson selected the statutory arbitration procedures and elected to have his appeal heard by a neutral third-party hearing examiner.

Chief Walker, Mary Andrews, Lubbock's Civil Service Director and Human Resources Managing Director, and the City of Lubbock, (collectively "Lubbock"), filed this suit, seeking a declaration that Lubbock was under no obligation to comply with subsection 143.057(d). Unlike

---

**1.** 972 S.W.2d 729 (Tex.1998).

**2.** Tex. Loc. Gov't Code §§ 143.001–.134.

**3.** *See Proctor,* 972 S.W.2d at 734, 738.

**4.** *See* 959 S.W.2d 686, 690.

**5.** *See id.* at 692.

**6.** *See* Tex. Loc. Gov't Code § 143.057(d).

subsection 143.057(d), Ordinance 862 does not allow a disciplinary appeal to a "qualified neutral arbitrator" selected by the AAA or the FMCS. Instead, the ordinance provides for a hearing before the civil service commission, and an appeal of the commission's decision to the district court for de novo review. Thus, along with its constitutional challenges, Lubbock argues that Ordinance 862, not subsection 143.057(d), governs its civil services because its citizens never voted to adopt any of the legislative amendments to the Civil Service Act.

The Attorney General intervened to defend the statute's constitutionality.[7] All parties moved for summary judgment. The trial court denied Lubbock's motion and granted the motions the Attorney General and Wilson filed, declaring the statute constitutional. The court of appeals reversed, holding that: (1) subsection 143.057(d), not Ordinance 862, governs Lubbock's civil services; and (2) Lubbock had no standing to challenge the statute on due process or equal protection grounds, but (3) concluding that contrary to article III, section 1 of the Texas Constitution, subsection 143.057(d) unconstitutionally delegates legislative authority to a private entity because it provides inadequate guidelines to the AAA or the FMCS to determine whether arbitrators are "qualified" and "neutral"; and (4) subsection 143.057(d) unconstitutionally infringes upon Lubbock's home rule powers under article XI, section 5 of the Texas Constitu-

tion.[8] Wilson, the Attorney General, and Lubbock each filed petitions for review.

■ The Texas Constitution allows a home rule city such as Lubbock to be governed, generally, by ordinances adopted pursuant to its municipal charter.[9] But the Legislature can limit or augment a city's self-governance.[10] In this case, for example, the Legislature conferred upon Lubbock's citizens the power to determine whether the Civil Service Act would govern Lubbock's civil services.[11]

It is undisputed that Lubbock's citizens, in 1947, voted to adopt the Civil Service Act. It is also undisputed that at the time of the vote, article 1269m [12] was the governing statute and that the procedures for disciplinary-action appeals only provided for appeals to the Civil Service Commission.[13] And it is undisputed that in 1948, Lubbock adopted Firemen's and Policemen's Civil Service Ordinance 862, tracking the language of article 1269m.[14]

By 1983, the Legislature had amended the Civil Service Act a number of times, including adding the Act's arbitration provision.[15] In 1987, the Legislature codified the Civil Service Act in substantially the same form as the 1983 version of article 1269m.[16] The arbitration provision authorizing arbitration before a private hearing examiner was, as a result, codified in Texas Local Government Code, Chapter 143, subsection 143.057(d).

---

7. During the pendency of the appeal before this Court, John Cornyn succeeded Dan Morales as Texas Attorney General.

8. 959 S.W.2d 686.

9. *See* Tex Const. art. XI, § 5.

10. *Id.*

11. *See* Tex. Loc. Gov't Code § 143.002 .

12. *See* Act of June 2, 1947, 50th Leg., R.S., ch. 325, § 1, 1947 Tex. Gen. Laws 550, *repealed by* Act of April 20, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 1306.

13. *Id.* § 16.

14. *See* Lubbock, Tex., Ordinance 862 (Feb. 26, 1948).

15. *See* Act of May 27, 1983, 68th Leg., R.S., ch. 420, 1983 Tex. Gen. Laws 2265–66, *repealed by* Act of April 29, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 1306.

16. *See* Act of Apr. 29, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 886.

Lubbock argues that because its citizens did not specifically vote to adopt succeeding amendments to the Civil Service Act, including the amendment now codified in subsection 143.057(d), its Ordinance 862, reflecting the original Civil Service Act still governs—meaning that the arbitration process Wilson requested is not part of Lubbock's civil service system. Wilson responds that subsection 143.057(d) did not require an additional vote to adopt and apply it to Lubbock's civil services. He reasons that legislative amendments to local-adoption statutes must apply to cities that adopted the statute before the amendments were added, otherwise the amendments would be meaningless. Consequently, he is entitled to arbitration before a private hearing examiner.

In holding that subsection 143.057(d) applies to Lubbock's civil services, the court of appeals stated that the vote to approve the 1947 Civil Service Act constituted a vote adopting Chapter 143 of the Texas Local Government Code because Chapter 143 merely codified former article 1269m, and was intended to be a continuation of the previously existing law. But resolving that issue does not address Lubbock's contention that its voters adopted the Civil Service Act only as it existed in 1947, devoid of the hearing examiner provision, and that the subsequent amendment to the Act was therefore ineffective to alter the civil service procedures set out in Lubbock's ordinance 862.

■ Although no case answers the precise question, several cases that have addressed the effect of amendments to the Civil Service Act assume that amendments to the Act govern in cities that have adopted it. For example, in *Patton v. City of Grand Prairie*,[17] we held that the Grand Prairie Civil Service Commission's decision reducing a police officer's indefinite suspension was appealable to the district court under amendments to the Civil Service Act. Implicit in that decision is that legislative amendments to the Act govern in cities that have adopted it. That the amendments apply is further bolstered by our decision in *Patton* that *Firemen's and Policemen's Civil Service Commission of the City of Fort Worth v. Blanchard*,[18] and a number of courts of appeals' decisions, were no longer controlling due to legislative amendments in the Civil Service Act.[19]

In *City of San Antonio v. Wallace*,[20] we analyzed a San Antonio ordinance that abolished classified positions established by the state's Civil Service Act. We stated there that "where state *imposed* civil service . . . laws are involved, there are two legislative actions to consider, i.e., the state enactment and the city ordinance. . . ."[21] Relying on the Texas Constitution to strike down the ordinance, we said "no . . . charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."[22]

The Fourth Court of Appeals explicitly recognized that after the city adopted the Civil Service Act for its firefighters, the "Act, *with its amendments*, became a part of the contract of employment between the firemen and the City of San Antonio."[23] When a City of San Antonio rule, adopted under the original Civil Service Act, conflicted with the Act after it was amended in 1957, the court of appeals held that the city's rule "was superseded by the statute

---

**17.** 686 S.W.2d 108, 110 (Tex.1985).

**18.** 582 S.W.2d 778 (Tex.1979).

**19.** *See Patton,* 686 S.W.2d at 110.

**20.** 161 Tex. 41, 338 S.W.2d 153 (1960).

**21.** *Id.* at 155 (emphasis added).

**22.** *Id.* at 156 (citing Tex. Const. art. XI, § 5).

**23.** *Ward v. City of San Antonio,* 560 S.W.2d 163, 165 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.) (emphasis added).

and became ineffective."[24] In *Crawford v. City of Houston*,[25] the court of appeals also recognized that amendments to the Act are controlling. In analyzing this Court's decision in *Blanchard*, the court held that "[s]ince all appeals in *Blanchard* occurred subsequent to the effective date of the 1977 amendment of Section 18 [of the Civil Service Act], that Section as amended controls those appeals."[26]

In *City of Lubbock v. Knox*,[27] the Seventh Court of Appeals applied a post-adoption amendment to the Civil Service Act to Lubbock's promotional examination for police officers. Not only did the court of appeals not question applying the post-adoption amendment, but it sought a construction that would "give effect to the amendment and harmonize it with other sections of the statute."[28]

As well, the statutory language of the Act supports our conclusion that post-adoption amendments to the Act govern in cities that have adopted it. In 1947, article 1269m, section 27(a) stated:

> the provisions of this Act shall not apply to any city unless first determined at an election ... if at such election a majority of the people voting shall favor the adoption of the provisions of this Act, it shall thereafter become the duty of [the] governing body to put into effect the provisions of this Act.[29]

Further, section 28 of the Act stated that "[t]his Act shall supersede all other civil service pertaining to Firemen and Policemen in the cities covered hereby."[30]

We cannot give effect either to the Legislature's command that the Act's provisions supersede "all other civil service" or

the legislative amendments to the Act if Lubbock, by city ordinance, may freeze in time a legislative enactment. Consequently, we conclude that once Lubbock's citizens voted to be governed by the Civil Service Act, they are governed by the Act as it existed when the vote occurred, and as it is amended by the Legislature from time to time.

To give effect to the citizens' vote, and meaning to the statutory language and the amendment, it is perhaps helpful to view the statute as providing a governing option. That is, under the statute, the citizens of a municipality may opt to have state law govern police and fire employees. If the citizens so opt, the state act, including subsequent amendments, controls.

But having at one time opted to let state law govern, those citizens also may opt out of state law and return the administration of its police and fire employees to local city ordinances. As its predecessor statute did, Chapter 143, section 143.004 allows a city's voters to withdraw the city from the Civil Service Act.[31]

■ As long as the Civil Service Act governs Lubbock, however, it must adhere to the Act's post-adoption amendments. Accordingly, we hold that Chapter 143, including subsection 143.057(d), and not Ordinance 862, controls. Wilson is therefore entitled to have his disciplinary appeal decided before a private hearing examiner in accordance with subsection 143.057(d).

■ Lubbock also argues that subsection 143.057(d): (1) violates due process because it is unconstitutionally vague; and

24. *Firemen's and Policemen's Civil Serv. Comm'n v. Rodriguez*, 326 S.W.2d 624, 626 (Tex.Civ.App.—San Antonio 1959, no writ).

25. 600 S.W.2d 891 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

26. *Id.* at 893.

27. 736 S.W.2d 888, 893 (Tex.App.—Amarillo 1987, writ denied).

28. *Id.*

29. *See* Act of June 2, 1947, 50th Leg., R.S., ch. 325, § 27, 1947 Tex. Gen. Laws 550, *repealed by* Act of April 20, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 1306.

30. *Id.* § 28.

31. *See* Tex. Loc. Gov't Code § 143.004.

(2) violates equal protection because it unconstitutionally biases hearing examiners in favor of the disciplined officer. In *Proctor*, we stated that "[w]e agree with the court of appeals that the City has no standing to raise due process and equal protection challenges." [32] If Lubbock has no standing to raise these challenges, then the city officials who bring this case would likewise lack standing because a public official acting in an official capacity is an agent of the entity the official represents. [33] But we overstated our position.

In *Proctor*, Lubbock did not contend that it was deprived of due process or equal protection. Instead, it relied on article III, Section 1 of the Texas Constitution and claimed that there had been an unconstitutional delegation of legislative authority. [34] The plaintiffs countered that the city's claim was in fact a due process claim. We disagreed with the plaintiffs, holding that the delegation issue was separate and distinct from a due process challenge. Accordingly, in *Proctor*, we were not required to reach the issue of standing to assert a due process claim. Further, to the extent that our agreement with the court of appeals reads to mean that the actual issue is one of "standing," which bears on subject matter jurisdiction, we used an unfortunate choice of words.

Under our standing jurisprudence, Lubbock and its city officials acting in their official capacities do have standing to assert these claims because they have alleged concrete injuries and have asked for a remedy that, if granted, would end the controversy. In *Texas Association of Business v. Texas Air Control Board*, we explained that the constitutional demands of standing are that there is (a) a real controversy between the parties, which (b) will be actually determined by the judicial

declaration sought. [35] Under this standard, Lubbock indeed has standing. First, Lubbock's interests are implicated: it loses some ability to discipline or to remove its police officers, and it is subjected to potential litigation or liability for officers who are returned to its police force by an arbitrator. Second, Lubbock demands a decree interpreting subsection 143.057(d) that will remedy its alleged injury. Because Lubbock has standing to bring its claims, we assume without deciding that government entities can raise due process and equal protection challenges and confront the merits of its constitutional challenges.

■ Lubbock first challenges subsection 143.057(d) on vagueness grounds. We have previously answered this challenge in *Proctor*. [36] The statute is not unconstitutionally vague. [37]

■ Lubbock's second due process or equal protection challenge is that the statutory arbitration scheme creates an inherent bias in favor of the disciplined employee because only the employee has the right to request a fee-producing hearing by a hearing examiner. Therefore, Lubbock reasons, this scheme motivates hearing officers to rule favorably for the employee to maintain an incentive for other disciplined employees to continue to choose to have their appeals heard by a hearing examiner rather than Lubbock's Civil Service Commission. Lubbock also asserts that the bias the statute creates violates the equal protection guarantees of both the state and federal constitutions because it facially discriminates against municipalities by treating municipalities differently than police officers and firefighters. Furthermore, citing *Commonwealth Coatings Corp. v.*

**32.** *Proctor*, 972 S.W.2d at 734.

**33.** *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**34.** *See* 972 S.W.2d at 734.

**35.** 852 S.W.2d 440, 446 (Tex.1993).

**36.** *See* 972 S.W.2d at 737.

**37.** *See id.*

*Continental Casualty Co.,*[38] and *Tumey v. Ohio,*[39] Lubbock claims that subsection 143.057(d)violates federal due process principles enunciated by the Supreme Court because it inherently creates a pecuniary interest on the part of the hearing examiner.

■ Because Lubbock mounts a facial challenge to the statute, it must demonstrate that the statute always operates unconstitutionally.[40] But there is no showing that all hearing examiners will, in every situation, lean toward decisions favoring the disciplined employee. In fact, the disciplined employee does not pick the hearing officers. While only the disciplined employee may initiate the hearing process, the employee and Lubbock are required to (1) agree on the selection of the hearing examiner, or (2) alternately strike potential examiners from a list obtained from the AAA or FMCA, or their successors. It is no more likely that hearing examiners will lean toward decisions favoring the disciplined employee than it is that hearing examiners will guard their reputations for impartiality in order to get on the AAA and FMCA lists in the first place and to avoid being struck by *either* side.

Lubbock's attenuated reasoning is far from the indications of bias present in both United States Supreme Court cases that it cites. In *Tumey,* the official trying the case had a "direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case" because the official could recover his fees or costs for the trial only if he convicted the defendant.[41] Examining statutory rather than due pro-

cess requirements, *Commonwealth Coatings* likewise involved a more direct indication of bias because one of the parties was a "regular" and "significant" customer of one of the arbitrators, who had actually rendered services on the very projects involved in the underlying arbitration.[42] Failing to demonstrate that subsection 143.057(d) will always operate unconstitutionally, Lubbock's facial challenge to the statute also fails.

Finally we note that in *Proctor* Lubbock did not contend, and we therefore did not decide, whether subsection 143.057(d) "impermissibly delegated *authority to hear* appeals to a private decisionmaker."[43] Various amici urge this Court to decide that issue in this case. But it is not apparent that this broad delegation issue was properly presented here or in the court of appeals in a manner that would distinguish it from the issues *Proctor* addresses.

Lubbock argued in the court of appeals that subsection 143.057(d) is unconstitutional under article III, section 1 of the Texas Constitution "because it confers legislative authority on a private entity.... Specifically, [it] fails to provide any guidelines to the AAA or FMCS in determining whether examiners are 'qualified' and 'neutral' under the statute and leaves such determination to such private entities on an *ad hoc* basis."[44] Applying the *Boll Weevil*[45] test to this same argument, we concluded in *Proctor* that "section 143.057(d) is not an overly broad delegation of legislative authority."[46]

---

**38.** 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

**39.** 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

**40.** *See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 518 (Tex.1995) (citing *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

**41.** *Tumey,* 273 U.S. at 520, 523, 47 S.Ct. 437.

**42.** *See Commonwealth Coatings Corp.,* 393 U.S. at 146, 89 S.Ct. 337.

**43.** *See Proctor,* 972 S.W.2d at 735.

**44.** *See Wilson,* 959 S.W.2d at 690 (emphasis added).

**45.** *See Texas Boll Weevil Eradication Found., Inc. v. Lewellen,* 952 S.W.2d 454, 472 (Tex. 1997).

**46.** *See Proctor,* 972 S.W.2d at 738.

■ With regard to Lubbock's other argument that subsection 143.057(d) violates its home rule authority under article XI, section 5 of the Texas Constitution, the court of appeals, in this case, purported to frame Lubbock's point of error differently than the issue it answered in *Proctor*.[47] The court stated that "[a]lthough a similar issue was raised in *Proctor*, it was unnecessary to our decision and therefore, we declined to consider it."[48] But Lubbock's argument in the court of appeals in this case is identical to its argument in *Proctor*. Lubbock contended in point of error five in the court of appeals that, "absent a specific constitutional provision, a home rule city cannot surrender or be compelled to surrender its governmental functions, but retains the authority to direct, control, and discipline its police officers."[49] We stated in *Proctor* that "[t]he City argues that section 143.057(d) violates the constitutional authority granted to home rule cities under Article XI, Section 5 of the Texas Constitution by infringing on the City's governmental authority to direct, control, and discipline its police officers and firefighters. We reject this argument."[50] Thus, *Proctor* decided the precise delegation questions raised by Lubbock here and in the court of appeals. Lubbock raised no other delegation issue in a way that distinguishes it from the delegation questions *Proctor* answers. Lubbock, through questioning at oral argument, had the opportunity to direct this Court to argument in the court of appeals where it may have raised the issue that subsection 143.057(d) impermissibly delegates authority to hear appeals to a private decisionmaker. Lubbock offered only that "it was there in our inherent bias argument before the court." But the two arguments are distinct. The inherent bias argument raises an equal protection issue, not an unconstitutional delegation challenge. Moreover, the briefing in this Court and the court of appeals

does not bear out Lubbock's argument that the broad delegation issue was in its inherent bias argument, or anywhere else in its briefs. Thus, without adequate briefing on the broad delegation issue here or in the court of appeals, we decline to embark on a pronouncement regarding whether subsection 143.057(d) impermissibly delegates authority to hear appeals to a private decisionmaker.

For the foregoing reasons, we hold that Lubbock's civil service employees are governed by Chapter 143, including subsection 143.057(d), of the Texas Local Government Code. While Lubbock, and its officials acting in their official capacity, have standing to argue that the statute violates its due process and equal protection rights, its constitutional challenges to the statute fail. And because subsection 143.057(d) is not an unconstitutional delegation under either article II, section 1 or article XI, section 5 of the Texas Constitution, we reverse the court of appeals' judgment and reinstate the trial court's judgment for Wilson.

Justice HECHT filed a concurring opinion.

Justice HECHT, concurring.

I concur in the Court's opinion except for its conclusion that respondents do not argue that article XI, section 5 of the Texas Constitution precludes the Legislature from delegating the authority to hear civil service appeals to a private entity as it has done in section 143.057(d) of the Texas Local Government Code. This argument is different from another argument respondents make, and which we addressed in *Proctor v. Andrews*, that article III, section 1 of the Texas Constitution precludes the Legislature from delegating the authority to a private entity to determine who can be a neutral arbitrator in

47. *See Wilson,* 959 S.W.2d at 690.

48. *Id.*

49. *See Andrews,* 959 S.W.2d at 690.

50. *See Proctor,* 972 S.W.2d at 733.

hearing such appeals.[1] In *Proctor* we rejected the latter argument[2] and did not address the former argument.[3]

The Court concludes that respondents did not raise their nondelegation argument regarding the authority to decide appeals in the court of appeals, but that is simply incorrect. Respondents argue that to delegate the authority to decide appeals is to delegate an important element of a city's authority to discipline, suspend, or discharge police officers. Respondents stated in their brief:

> It has long been settled by numerous cases that the city's governmental functions, such as the exercise of its police power, must remain under the control of the city and such functions cannot be transferred or ceded to another entity (either voluntarily or involuntarily) absent specific constitutional provision.

\* \* \*

> The City submits that § 143.057 ... is an invalid and unconstitutional interference with the City's constitutional rights, powers and duties under the home-rule provisions of the Texas Constitution which prohibit the delegation to a third power of the City's governmental powers, which include its duty and authority to discipline, suspend or discharge its police officers.

The court of appeals discussed this argument at length and concluded that the statutory delegation was improper.[4]

The court of appeals assumed the premise of respondents' argument, that requiring a city to arbitrate civil service appeals at a police officer's election was a delegation of the city's supervisory authority over the police and then applied the factors set out in *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*[5] for reviewing, under article III, section 1 of the Texas Constitution, a delegation of governmental authority to a private entity. Apart from the issue whether the analysis would be the same under article XI, section 5, as under article III, section 1, I do not agree that the arbitration requirement is a delegation of power constitutionally committed to a city. The city's argument would be the same if the officer appealed to a court under section 143.057(j): that is, that the city's authority to supervise its police officer cannot be delegated to the district court. The validity of the argument rests on the incorrect notion that requiring a city to arbitrate or litigate its disputes with officers before an arbitration panel or a court is an unconstitutional delegation of the city's police powers to the panel or court. Article XI, section 5 does not make a city the judge of its own cause.

The Court should address respondents' argument, as several amici curiae here urge. The argument was before the court of appeals and has been urged in this Court. I agree with the Court, however, that we should not address the argument that could be made, that section 143.057's delegation of authority to decide appeals violates article III, section 1 of the Texas Constitution, on the briefs we have before us.

With this caveat, I concur in the rest of the Court's opinion.

**1.** 972 S.W.2d 729, 734–738 (Tex.1998).

**2.** *Id.*

**3.** *Id.* at 735.

**4.** 959 S.W.2d 686, 690–692.

**5.** 952 S.W.2d 454, 473 (Tex.1997)