Fourth Court of Appeals
San Antonio, Texas


## MEMORANDUM OPINION

No. 04-19-00571-CV

**IN THE INTEREST OF J.J.R.S.** and L.J.R.S., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA01865
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: February 12, 2020

AFFIRMED

In this parental rights case, the trial court determined it was in the children's best interests

to appoint Mom's sister and husband (Aunt and Uncle) as permanent managing conservators and

to appoint Mom as a possessory conservator.[1]  Mom argues there was insufficient evidence to

support the order, the order was void for vagueness, and Family Code section 262.201(o) is facially

unconstitutional.  We affirm the trial court's order.

### BACKGROUND

On August 11, 2018, Mom was allegedly prostituting herself, and when her boyfriend came

into the motel room and attempted to rob the client, an altercation ensued.[2]  Officers from the San

---

[1] We use aliases to protect the children's identities.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).
[2] Mom and Dad were appointed as possessory conservators, but Dad did not appeal.  We recite only the facts pertaining to Mom and the children.

Antonio Police Department responded. The officers found the two children, then ages ten and eight, in the same motel but in another room. In that room, the officers found methamphetamine, marijuana, glass pipes, and an unsecured weapon. Mom stated the weapon was hers.

While the officers were still at the motel, either the San Antonio Police Department or Mom called Aunt (Mom's sister) to come and take the children. Aunt took the children to her home where they have been living with Aunt and Uncle.

Although the children were safe and doing well with Aunt and Uncle, on August 20, 2018, the Department sought temporary managing conservatorship of the children in case Mom tried to take the children back from Aunt and Uncle. The trial court granted temporary orders which appointed the Department as temporary managing conservator of the children, and the Department chose for the children to remain with Aunt and Uncle.

Sometime before the September 12, 2018 section 262.201 hearing, the Department talked with Mom and tried to serve her, but Mom was not served before the hearing. At the conclusion of the adversary hearing, the trial court again appointed the Department as temporary managing conservator of the children. Mom was served by citation by publication on September 18, 2018.

Mom received a service plan created by the Department, but Mom did not complete her plan.[3] She failed to complete her psychological evaluation, drug assessment, drug testing, or substance abuse treatment program; she did not attend most scheduled visits with the children or provide proof of stable housing and employment. Mom was authorized twenty-three visits with her children; she attended four but did not provide any reason for missing the other visits. She was ordered to complete twelve drug tests; she completed none.

---

[3] The record on Mom's service plans is not clear. Mom's first service plan in the record shows a "Plan Completed/Conference Date" of September 13, 2018, but at the September 12, 2018 adversary hearing, the Department case worker testified that the Department sought temporary managing conservatorship because Mom refused to sign her service plan.

Although the children's ad litem and the CASA volunteer recommended that the trial court terminate Mom's parental rights, the Department did not request termination because of the children's love for their mother and their ongoing desire to see her.

Taking the children's desires into consideration, the trial court appointed Aunt and Uncle as permanent managing conservators and Mom as a possessory conservator. But it ordered that, for now, Mom have no visits with the children unless Aunt and Uncle approved. Mom appeals.

**INSUFFICIENT EVIDENCE FOR CONSERVATORSHIP ORDER**

In her first issue, Mom argues there was insufficient evidence to support the trial court's conservatorship order. Mom argues that the Department did not present any evidence that Mom lacked stable housing, was not employed, or used illegal drugs. Mom also insists that the Department's witness produced only conclusory statements that are, in legal effect, no evidence.

The Department contends that the evidence was legally and factually sufficient to support the trial court's order.

We briefly recite the evidentiary and appellate review standards.

## A. Standard of Review

"Conservatorship determinations . . . are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *accord In re L.G.R.*, 498 S.W.3d 195, 207 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002; *accord In re J.A.J.*, 243 S.W.3d at 614. In its conservatorship determination, the trial court has broad discretion to decide the best interest of the child. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).

Although an appellant may raise sufficiency of the evidence issues, "[l]egal and factual insufficiency challenges are not independent grounds for asserting error in custody determinations, but are relevant factors in assessing whether the trial court abused its discretion." *In re A.L.E.*, 279 S.W.3d at 427 (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *accord In re A.L.E.*, 279 S.W.3d at 428.

**B.      Evidentiary Standard**

In a conservatorship determination, an order appointing a nonparent as a managing conservator must meet only a preponderance-of-the-evidence standard. *See* TEX. FAM. CODE ANN. § 105.005; *In re J.A.J.*, 243 S.W.3d at 616; *In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.).

**C.      Discussion**

At trial, the Department's representative testified regarding Mom's and the children's circumstances that the trial court could use to evaluate the best interests of the children. *See* TEX. FAM. CODE ANN. § 263.307 (statutory factors[i]); *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976) (*Holley* factors[ii]).

The children were removed because Mom was prostituting herself, her boyfriend attempted to rob her client, and the young children were found in a room with methamphetamine, marijuana, glass pipes, and an unsecured weapon. *See* TEX. FAM. CODE ANN. § 263.307 (factors (1), (3), (8), (12)); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (G), (H)). The representative also testified that Mom attended only four of her scheduled twenty-three visits with her children; she did not complete any of her twelve ordered drug tests; she failed to complete her psychological evaluation, drug assessment, drug testing, and substance abuse treatment program; and she failed

to provide proof of stable housing and employment. *See* TEX. FAM. CODE ANN. § 263.307 (factors (8), (10), (11), (12)); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (G), (H), (I)). The representative testified that Mom could not meet the children's needs, the children are bonded to their current placement (Aunt and Uncle), and Aunt and Uncle are meeting all the children's needs now and will be able to continue to do so. *See* TEX. FAM. CODE ANN. § 263.307 (factors (2), (6), (13)); *Holley*, 544 S.W.2d at 371–72 (factors (A), (B), (C), (F), (G)).

Mom did not object to the testimony, and she did not present any evidence to rebut the Department's evidence.

We conclude the evidence was legally and factually sufficient to support the trial court's conservatorship order, and the trial court acted within its discretion. *See In re K.S.*, 492 S.W.3d at 426; *In re A.L.E.*, 279 S.W.3d at 428. We overrule Mom's first issue.

### CONSERVATORSHIP ORDER VOID FOR VAGUENESS

In her second issue, citing section 153.006, Mom argues the conservatorship order was void for vagueness because it does not state the times and conditions for visitation and the Department failed to show good cause why a specific order is not in the children's best interests. *See* TEX. FAM. CODE ANN. § 153.006 (Appointment of Possessory Conservator). Mom also asserts that because the order places sole discretion on granting visits in the Aunt and Uncle, her rights to her children are being effectively terminated.

The Department contends the trial court stated on the record why specific orders were not in the children's best interests and the order meets the good cause exception. *See id.* § 153.006(c).

**A.  Applicable Law**

The Family Code establishes guidelines for the trial court to use in determining possession for a possessory-conservator parent:

In ordering the terms of possession of a child under an order other than a standard possession order, the court shall be guided by the guidelines established by the standard possession order and may consider:

> (1) the age, developmental status, circumstances, needs, and best interest of the child;

> (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and

> (3) any other relevant factor.

TEX. FAM. CODE ANN. § 153.256; *accord In re K.A.M.S.*, 583 S.W.3d 335, 344 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

If possession is contested and the order varies from the standard possession order, "on request by a party, the court shall state in writing the specific reasons for the variance from the standard order." TEX. FAM. CODE ANN. § 153.258; *accord In re K.A.M.S.*, 583 S.W.3d at 344. If no party requests the findings, we will "imply all findings necessary to support the trial court's judgment." *In re K.A.M.S.*, 583 S.W.3d at 344; *accord Pickens v. Pickens*, No. 12-13-00235-CV, 2014 WL 806358, at *2 (Tex. App.—Tyler Feb. 28, 2014, no pet.) (mem. op.) (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam)).

**B.    Discussion**

*1.    Trial Court's Order*

The trial court's order appointed Aunt and Uncle as permanent managing conservators and Mom as a possessory conservator; it also states as follows:

> IT IS ORDERED that the conservators shall have possession of the children at times mutually agreed to in advance by the parties and, in the absence of mutual agreement, as specified in Attachment A to this order, which is incorporated herein as if set out verbatim in this paragraph.

In Attachment A, the following subparagraph addresses Mom's possession of, and access to, the children:

> 18.1 [Mom shall have] supervised visitation with the children, under the terms and conditions agreed to in advance by the managing conservator, provided that the

managing conservator or other placement shall have 48 hours advance notice of intent to exercise the visitation. The managing conservator or designee shall supervise the visitation.

Immediately after subparagraph 18.1 is the following handwritten interlineation:

Only if managing conservator agrees to visitation. Sole discretion.

### 2. Written Findings Not Requested

Although possession of the children was contested and the trial court varied from the standard possession order, the record does not show that Mom asked the trial court to state its findings in writing. *See* TEX. FAM. CODE ANN. § 153.258; *In re K.A.M.S.*, 583 S.W.3d at 344. Thus, we will "infer that the trial court made all the necessary findings to support its judgment." *See Pickens*, 2014 WL 806358, at *2 (citing *Roberson*, 768 S.W.2d at 281).

### 3. Section 153.006 Compliance

The order does not "specify and expressly state . . . the times and conditions for possession of or access to the child[ren]," *see* TEX. FAM. CODE ANN. § 153.006, but that does not end our analysis, *see In re A.N.*, No. 10-16-00394-CV, 2017 WL 4080100, at *8 (Tex. App.—Waco Sept. 13, 2017, no pet.) (mem. op.).

The Department's representative testified that Mom was scheduled for twenty-three visits, but she only showed up for four, and the representative testified about how Mom's failure to attend visits was harming the children emotionally. The children cried when Mom did not show up for the visits, and "when [Mom] doesn't show up, [the older child] is fearful that something's happened to [Mom]. She could be dead. She could be hurt. And so that lack of stability is extremely emotionally traumatizing for them."

The trial court expressly stated it was "deviating from the standard possession order based on the testimony and evidence the Court heard and the reasons for CPS intervention, and the

recommendations" from the CASA and the children's ad litem that Mom's parental rights be terminated.

### 4. Specific Orders Not in Best Interest of Children

Having reviewed the evidence in the record, we infer that the trial court found that ordering specific times and conditions for Mom's possession was not in the children's best interests, *see* TEX. FAM. CODE ANN. § 153.006; *In re K.A.M.S.*, 583 S.W.3d at 344, and we cannot conclude the trial court abused its discretion in deciding not to state specific times and conditions for Mom's visits but instead ordered that Aunt and Uncle set those times and conditions, *see In re K.A.M.S.*, 583 S.W.3d at 344 ("A trial court does not abuse its discretion in restricting a parent's possession when the record contains some evidence to support a finding that such restrictions are in the child's best interest."); *In re A.N.*, 2017 WL 4080100, at *8.

### 5. Restrictions on Access and Possession

In the second part of her second issue, Mom argues that the trial court's order effectively terminates her parental rights, but her argument is not persuasive.

First, the CASA volunteer and the children's ad litem both recommended Mom's parental rights be terminated—which would give Mom no access to the children. The Department did not ask for Mom's rights to be terminated because of the children's love for and bond with Mom, but it opposed *any* visitation by Mom for now based on the emotional trauma her no-shows caused the children. Although conditioning Mom's visitation rights on Aunt and Uncle's approval could be a severe restriction, "a severe restriction or limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child." *In re A.N.*, 2017 WL 4080100, at *7 (quoting *In re Walters*, 39 S.W.3d 280, 286 n.2 (Tex. App.—Texarkana 2001, no pet.)).

Second, as *In re J.A.J.* noted, "[t]he Family Code . . . guards against that possibility [because] [t]he trial court retains jurisdiction to modify a conservatorship order if it is in the child's

best interest, and the parent's or child's circumstances have materially and substantially changed since the order was rendered." *In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007). Mom was represented at trial by court-appointed counsel, and Mom was present at trial. Mom heard the trial court limit her access to her children and explain the reasons for the limitations, and Mom's counsel arguably had a duty to advise Mom that if her circumstances materially changed, she could petition the court for greater access. *See* TEX. FAM. CODE ANN. § 156.001; *In re J.A.J.*, 243 S.W.3d at 617.

We conclude the trial court's order was supported by the evidence and was not unreasonable or arbitrary. *See In re J.A.J.*, 243 S.W.3d at 617. We overrule Mom's second issue.

### CITATION BY PUBLICATION

In her third issue, Mom contends Family Code section 262.201(o) is facially unconstitutional because she was not served before the full adversary hearing and was thus denied her due process right to notice and to be heard.

The Department concedes it did not serve Mom before the adversary hearing but argues Mom's appearance at subsequent hearings made the failure to serve Mom harmless error.

**A.     Additional Background**

From the August 11, 2018 motel incident, Aunt took Mom's two children at Mom's request. On August 20, 2018, the Department petitioned for temporary managing conservatorship of the children to prevent Mom from taking the children back from Aunt and Uncle, and the trial court appointed counsel to represent Mom.

Although the adversary hearing and trial testimony was quite limited, it appears that sometime before the September 12, 2018 section 262.201 hearing (adversary hearing), the Department talked with Mom, but it did not successfully serve her. To try to serve Mom, the Department worker went to the motel where Mom had been living, but Mom was not in the room,

and the motel's front desk clerk said Mom no longer lived there. The Department called Mom on her phone and sent her text messages, but Mom did not respond. The Department asked Aunt if she knew where Mom was living, but Aunt did not know.

At the adversary hearing, the trial court acknowledged Mom's counsel's statement that Mom had not been personally served, but the court noted section 262.201(o) authorized the court to issue a temporary order before citation by publication was published if Mom's location was unknown. The trial court admonished the Department to keep trying to locate Mom so she could be personally served, but it also advised the Department to proceed with citation by publication.

The children's ad litem recommended that the children stay with Aunt and Uncle and asked the court for "an order protecting [the children] so that the parents can't come and pick them up."

The trial court's September 12, 2018 temporary order appointed the Department as temporary managing conservator of the children before Mom was served. Six days later, on September 18, 2018, the trial court signed an Order for Substituted Service by Posting, and Mom was served by citation by publication.

At the October 15, 2018 status hearing, Mom made a special appearance[4] and announced not ready. At the February 11, 2019, and May 13, 2019 status hearings, Mom appeared in person with counsel and announced ready. At the August 8, 2019 trial on the merits, Mom appeared in person with counsel but announced not ready, which was denied.

## B.    Applicable Law

Section 262.201(o) reads as follows:

---

[4] On September 23, 2018, Mom petitioned this court for a writ of mandamus—arguing that the trial court abused its discretion by removing Mom as primary managing conservator of her children before Mom was served. The petition also raised facial and as-applied challenges to section 262.201(o). In December 2018, this court denied Mom's petition and her motion for en banc reconsideration. Subsequently, Mom raised the same issues in the Texas Supreme Court and the Supreme Court of the United States; neither court granted her requested relief.

(o) When citation by publication is needed for a parent . . . in an action brought under this chapter because the location of the parent . . . is unknown, the court may render a temporary order without delay at any time after the filing of the action without regard to whether notice of the citation by publication has been published.

TEX. FAM. CODE ANN. § 262.201(o).

When we review a constitutional challenge to a statute, "we begin . . . with a presumption that the statute is valid." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 701 (Tex. 2014); *accord Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) ("We presume that a statute passed by the Legislature is constitutional.").

## C.    Facial Challenge

"A facial challenge claims that a statute, by its terms, always operates unconstitutionally." *Tenet Hosps.*, 445 S.W.3d at 702 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  To prevail in a facial challenge, the challenger "must demonstrate that the statute always operates unconstitutionally." *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex. 1999); *accord In re R.J.S.*, 219 S.W.3d 623, 628 (Tex. App.—Dallas 2007, pet. denied).  "A party seeking to invalidate a statute 'on its face' bears a heavy burden of demonstrating that the statute is unconstitutional in all of its applications." *HCA Healthcare Corp. v. Tex. Dep't of Ins.*, 303 S.W.3d 345, 349 (Tex. App.—Austin 2009, no pet.) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).  "Whether a statute is facially constitutional is a question of law that we review *de novo.*" *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *accord Tex. Alcoholic Beverage Comm'n v. Live Oak Brewing Co., LLC*, 537 S.W.3d 647, 654 (Tex. App.—Austin 2017, pet. denied).

## D.    Discussion

Mom argues that section 262.201(o) is facially unconstitutional because it "instructs courts to deprive Texans of their fundamental parenting rights before personal service or service by

publication has taken place."[5]  We presume that the statute is constitutional, *see Tenet Hosps.*, 445 S.W.3d at 701, and it is Mom's burden to show it is not, *see Wilson*, 10 S.W.3d at 670.

But Mom cannot meet her high burden "of demonstrating that the statute is unconstitutional in all of its applications," *see HCA Healthcare Corp.*, 303 S.W.3d at 349; *accord Wilson*, 10 S.W.3d at 670, because, inter alia, the statute's plain language is permissive, not mandatory, *see* TEX. FAM. CODE ANN. § 262.201(o).  The statute states "the court *may* render a temporary order without delay at any time after the filing of the action without regard to whether notice of the citation by publication has been published."  *Id.* (emphasis added).  The statute does not compel the trial court to render a temporary order before citation by publication has been published.  Instead, the trial court has discretion to consider the facts in each case and determine whether the circumstances warrant issuing a temporary order before citation by publication has been published.  *See id.*

The statute gives the trial court discretion to render a temporary order *after* it considers whether the Department has been diligent in its efforts to locate the parent, the parent's location and locating information is not known, *see In re E.R.*, 385 S.W.3d at 560–61, 564, citation by publication is appropriate, and citation by publication has been published.  *See* TEX. FAM. CODE ANN. § 262.201(o) (permissive, not mandatory, order).  The statute does not require the trial court to issue a temporary order before citation by publication is published.  *See id.*

In the instance recited above, the parent's due process rights would not be violated, and thus Mom has not met her high burden to "demonstrate[e] that the statute is unconstitutional in all of its applications."  *See HCA Healthcare*, 303 S.W.3d at 349; *see also Tenet Hosps.*, 445 S.W.3d at 702; *Wilson*, 10 S.W.3d at 670.  We overrule Mom's third issue.

---

[5] We agree that Mom's challenge is not moot because it is capable of repetition but evading review.  *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

**CONCLUSION**

Having reviewed the record, we conclude the evidence was legally and factually sufficient to support the trial court's conservatorship order, the trial court found good cause to not issue a dates-and-times specific order for Mom's visitation, and Family Code section 262.201(o) is not facially unconstitutional. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts should consider in determining the best interest of a child:

(1) the child's age and physical and mental vulnerabilities;
(2) the frequency and nature of out-of-home placements;
(3) the magnitude, frequency, and circumstances of the harm to the child;
(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
(5) whether the child is fearful of living in or returning to the child's home;
(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
(9) whether the perpetrator of the harm to the child is identified;
(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
(12) whether the child's family demonstrates adequate parenting skills; . . . and
(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[ii] *Holley* Factors. The Supreme Court of Texas identified the following factors that courts have used to determine the best interest of a child:

(A) the desires of the child;
(B) the emotional and physical needs of the child now and in the future;
(C) the emotional and physical danger to the child now and in the future;
(D) the parental abilities of the individuals seeking custody;
(E) the programs available to assist these individuals to promote the best interest of the child;
(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).