**The CITY OF HOUSTON and Lester Tyra, In his Official Capacity, Appellants,**

**v.**

**Robert JACKSON, Appellee.**

No. 14–00–00750–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 22, 2001.

Timothy J. Higley, Joan Lucci Bain, Houston, for appellants.

Fred A. Keys, Houston, for appellees.

Panel consists of Justices YATES, WITTIG, and FROST.

## OPINION

WITTIG, Justice.

This is a City of Houston jurisdictional claim against one of its firefighters. When the Houston Fire Department denied his voluntary transfer to a different fire station, Robert Jackson resorted to the statutory grievance process. A grievance examiner ordered the fire department to grant Jackson a transfer to certain stations of his choice. The department refused appellee's transfer requests and he brought this suit seeking damages and declaratory relief. The City filed a plea to the jurisdiction alleging Jackson did not receive a final order, thus did not exhaust all administrative remedies. The court denied the plea and the City brings this interlocutory appeal requesting we determine whether the trial court has subject matter jurisdiction to consider appellee's claims. We hold it does and affirm.

### Factual and Procedural Background

Jackson currently works as an engineer/operator for the Houston Fire Department ("HFD").[1] Beginning in 1996, he made several attempts to transfer to station 70, all of which were denied. Jack-

---

1. HFD is a department of the City of Houston. Lester Tyra was the chief of HFD at the time this appeal was filed. The City and Tyra are collectively referred to as "the City."

son then filed a grievance under chapter 143 of the Texas Local Government Code, commonly known as the Fireman's and Policeman's Civil Service Statute, to accomplish the transfer.

The administrative grievance process that Jackson undertook consists of as many as four steps. *See* TEX. LOC. GOV'T.CODE ANN. §§ 143.127(d)–143.131. Jackson was denied a transfer under Steps I and II. He then had a choice between appealing to an "independent third party hearing examiner" under section 143.129 or to a "grievance examiner" under section 143.130 (who is chosen by the civil service commission pursuant to section 143.132). Jackson chose the latter. The grievance examiner, Yolonda Coroy, held a hearing and, on November 21, 1996, submitted her "Written Findings and Recommendation for a Solution" pursuant to section 143 .130(d).[2] While she denied Jackson's specific request to be transferred to Station 70, she did order the department to grant Jackson's request for a transfer to any other station that had an opening available at the time. In the same document, the grievance examiner also informed the parties they had fifteen days "in which to file a written appeal requesting a review by the Civil Service Commission. . . ."

Neither party filed a step IV grievance procedure, which is an appeal to the commission. Therefore, the grievance examiner's decision was "considered accepted" by the parties. *Id.* at 143.130(e). Jackson requested transfers to Stations 11B and 72D. The City refused to follow the examiner's decision. The City's human resources and legal departments then wrote a series of letters between themselves, debating the meaning of the grievance exam-

iner's order, including, among other things, whether Jackson's transfer should take precedence over those of other personnel with more seniority than Jackson. Nearly five months after her original order was issued without compliance, the grievance examiner issued a "Written Clarification of Order" dated March 13, 1997. She noted that the clarification was necessary to "reiterate the intent of [her original] order and give [Jackson] a fair opportunity to effect a transfer." She went on to hold that, upon Jackson's submitting a transfer request, the City was ordered to grant the request, regardless of the seniority of other applicants. Jackson then requested transfers to numerous other stations, all of which were in turn denied. Jackson filed a step I grievance for denial of his last transfer requests; however, an assistant chief summarily dismissed it in a letter, asserting, "I cannot rule on a grievance that has been decided by a grievance examiner."

Jackson sued in district court, making a claim under section 143.134(h), which states:

> If the decision of the commission under Section 143.131 or the decision of a hearing examiner under Section 143.129 that has become final is favorable to a fire fighter, the department head shall implement the relief granted to the fire fighter not later than the 10th day after the date on which the decision was issued. If the department head intentionally fails to implement the relief within the 10 day period, the municipality shall pay the fire fighter $1,000 for each day after the 10 day period that the decision is not yet implemented.

2. "The grievance examiner shall make written findings and a recommendation for solution of the grievance within 15 calendar days after the date the hearing ends. The findings and recommendation shall be given to the commission. . . ." TEX. LOC. GOV'T.CODE ANN. § 143.130(d).

*Id.* at 143.134(h). The City filed a plea to the jurisdiction alleging the court did not have jurisdiction to hear a claim under this provision. The plea was initially granted, but on reconsideration, the trial court denied the plea. The City now brings an interlocutory appeal of that decision.

## Discussion

■■■■ A plea to the jurisdiction contests the court's authority to determine the subject matter of the cause of action. *City of Houston v. Lazell–Mosier*, 5 S.W.3d 887, 889 (Tex.App.—Houston [14th Dist.] 1999, no pet.). It is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. *Id.* The purpose of a dilatory plea is not to force the plaintiff to preview its case on the merits but to establish a reason why the merits of the plaintiff's claims should never be reached. *Id.* In deciding whether to grant a plea to the jurisdiction, the trial court normally looks only to the allegations in the petition. *Id.* When reviewing a trial court order granting a plea to the jurisdiction, an appellate court construes the pleadings in favor of the plaintiff and looks to the pleader's intent. *Id.*

■■■ As stated, Jackson's petition asserted a claim under section 143.134(h). The City argues that there are only two final decisions which would trigger liability under this section: (1) a decision of the commission under section 143.131, or (2) the decision of a hearing examiner un-

der section 143.129. Jackson pursued his grievance under section 143.130(a) for his step III hearing. The City maintains that section 143.134(h) is "clear and unambiguous" and in such a case, the court must presume the legislature meant what it said and the court has no authority to add or subtract from the statute's wording. *Ex parte Current*, 877 S.W.2d 833, 837 (Tex.App.—Waco 1994, no pet.) Further, a court normally looks to a statute's plain meaning when it is unambiguous. *Fleming Foods of Tex., Inc., v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999). Thus, the City argues, since a decision by a grievance examiner under 143.130 is not contemplated under the plain meaning of section 143.134(h), the trial court had no jurisdiction to consider Jackson's claim, and we must end our inquiry here and dismiss Jackson's claims.

Section 143.134(h) is not as pellucid as the City pleas. The statute may be crystalline and unambiguous in the abstract, but reveals a latent ambiguity in our scenario. That is, while the statute makes it clear how a grievant is to proceed to enforce a final favorable order under sections 143.131 or 143.129, it is not at all patent how a grievant with a final favorable order under 143.130 should proceed when the other party, required to perform certain acts under the order, neglects to appeal and refuses to comply with the order.[3]

■■■ Thus, we must discern the intent of the legislature as it applies to this situation. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex.1996) (a court must attempt to ascertain what the legislature intended and interpret the statute accordingly). Legislative intent should be deter-

---

**3.** The City claims the order was not favorable to Jackson because it did not grant his request for a transfer to station 70. We disagree. Though the order did not grant Jackson the exact transfer, it nonetheless explicitly granted him other relief in the form of transfer options. Therefore, the order was favorable to Jackson.

mined from the entire legislative act, and not simply from isolated portions. *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex.1998). As such, we must read the statute as a whole and interpret it to give effect to every part. *Id.* We must resolve any ambiguities by rejecting interpretations which defeat the purpose of the legislation as long as another reasonable interpretation exists. *Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979). A too-literal construction of a statute, which would prevent the enforcement of it according to its true intent, should be avoided. *State v. Dyer,* 145 Tex. 586, 200 S.W.2d 813, 815 (1947).[4]

We are also guided by the legislature itself in interpreting its acts. The Code Construction Act states, in pertinent part, that when construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider, among other matters: the (1) object sought to be attained; (2) circumstances under which the statute was enacted; and (3) consequences of a particular construction. Tex. Gov't Code Ann. § 311.023.

In ascertaining the legislature's intent, we begin by looking to the provisions governing an appeal from the grievance examiner to the commission. Section 143.130(e) states:

> If the [grievance examiner's] proposed solution is not acceptable to either the fire fighter or police officer or the department head, either party may file a step IV grievance form with the director in accordance with Section 143.131. If the fire fighter or police officer or the department head fails to timely file a step IV grievance form, the solution is considered accepted by that person.

Tex. Loc. Gov't.Code Ann. § 143.130(e). Where section 143.130 ends with the procedure for appealing the grievance examiner's proposed solution,[5] section 143.131 picks up. It states, in relevant part:

> (a) If the department head or the fire fighter or police officer rejects the proposed solution under Section 143.130,

---

4. A classic example of this principle rejecting a too-literal statutory construction is in the venerable case of *Church of the Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). There, a religious society contracted with an E. Warren Walpole to travel from his native England and enter into service as rector and pastor in its church in New York state. Upon Reverend Walpole's arrival, the government fined the church under a federal statute making it "unlawful for any ... corporation, in any manner whatsoever, to ... in any way assist the or encourage the importation or migration of any alien ... into the United States ... under contract or agreement ... made previous to the importation or migration of such alien ... to perform labor or service of any kind in the United States...." *Id.* at 458, 12 S.Ct. 511. The Supreme Court conceded that the church's action was within the letter of the law. However, the Court went on to state that:

> It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its mak-

ers.... This is not the substitution of the will of the judge for that of the legislator; for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

*Id.* at 459, 12 S.Ct. 511. The Court held that because Congress did not intend the law apply to its case, the fine was reversed. *Id.* at 472.

5. We note that the statute uses terms such as "recommendation" and "proposed solution." Though these are couched in seemingly precatory or deferential terms, it is clear from the statute they carry the weight of authority when they are not both appealed and overturned.

the department head, the department head's designated representative, or the fire fighter or police officer must complete a step IV grievance form and file it with the director within 15 calendar days after the date the person receives the grievance examiner's recommendation.

. . . .

(c) The commission shall base its decision solely on the transcript and demonstrative evidence offered and accepted at the step III hearing. . . . The commission decision is final.

*Id.* at § 143.131. Thus, when no party filed a step IV grievance to the commission, it was "considered accepted" by the parties. *Id.* at §§ 143.130(e), 143.131(a). Stated another way, because the grievance examiner ordered the City to effect a transfer upon Jackson's request (which the City did not do), and the City did not appeal to the commission, the City "rejected" the grievance examiner's solution. *Id.* at § 143.131(a). At this point, because of the City's refusal to follow the grievance examiner's now-final decision, Jackson was now essentially in legal limbo.[6]

▮ Jackson argues that this was not what the legislature had in mind when it enacted 143.134(h). Rather, he asserts, the legislature intended that an unappealed order of the grievance officer be a final decision of the commission for purposes of section 143.134(h). A number of factors strongly favor this construction. Accordingly, we agree.

▮ First, the grievance examiner is closely associated with the commission as their duties pertain to grievances under sections 143.130 and 143.131. She is appointed by the commission, is responsible only to the commission, and is paid by the commission. *Id.* at § 143.132(a). The grievance examiner is given broad powers to do things such as examine witnesses under oath and subpoena witnesses and documents. *Id.* at § 143.132(b). In an appeal from the grievance examiner's proposed solution, the commission does not receive any new evidence; rather, it must base its decision solely on the grievance examiner's record. *Id.* at § 143.131(c). These factors demonstrate that while the grievance examiner may not necessarily be an agent of the commission under traditional agency law, she acts under its auspices and performs duties on its behalf. Further, because the commission bases its determination of grievances solely on the grievance examiner's record, its duties in determining grievances are largely an oversight function. Moreover, it is a function that clearly must be invoked by the party dissatisfied with the grievance examiner's order. When the sole reason there was no involvement by the commission is that the losing party did not invoke its powers, there is a material sensible construction of section 143.134(h): For purposes of enforcing a grievance examiner's order, the legislature intended that a final, unappealed order of the grievance examiner is a final decision of the commission under section 143.134(h).

Finally, we examine the issue in view of the object sought to be obtained under the Fireman's and Policeman's Civil Service Statute: "The purpose of this chapter is to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." TEX. LOC. GOV'T.CODE

---

**6.** As stated in the factual summary, Jackson even attempted to pursue another step I grievance, which was summarily rejected by a fire department official. With a straight face, after the department refused to hear Jackson's step I grievance, the City now reverses its position and claims that this is what the legislature intended all along.

ANN. § 143.001. By this act, then, the legislature expressed its intent to set out to create a fair, consistent and orderly process for handling grievances by career firefighters and policemen. By enacting the penalty provision under 143.134(h), we observe the legislature was determined to forcefully discourage a party from refusing to timely comply with a final order. Hence, we hold that the material factor is not so much who issued the order, but whether that order is final.[7] In light of this, it makes no sense that the legislature would have intended to include under 143.134(h) the final orders of a 143.129 hearing officer and of the commission under 143.131, but not that of a grievance examiner under 143.130. *A fortiori*, we cannot fathom that the legislature intended the scenario proposed by the City in which an aggrieved party who is granted relief, and who has exhausted his administrative remedies, must begin anew at the bottom by starting again with a step I grievance, possibly in perpetuity.[8] Nor do we believe the legislature intended the

seemingly "less drastic" remedy that Jackson would be required to seek a writ of mandamus against his department head in order to have a final order enforced. These constructions would not effectuate the legislature's intent, only frustrate it, and impose a patently absurd result.[9] *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991) (holding that courts should avoid interpretations of statutes which would produce absurd results).

■ We have thoroughly examined the relevant provisions of the act in reference to the applicable rules and canons of statutory construction. We find the legislature intended-though did not clearly articulate—that a final unappealed decision by a grievance examiner under section 143.130 is a final decision of the commission under section 143.131. Therefore, when the City failed to timely appeal to the commission the grievance examiner's recommended solution ordering relief to Jackson, the grievance examiner's recommended solution became a final decision of the commission.[10]

7. Why would the legislature have imposed a serious fine for refusing to comply with an order under sections 143.129 or 143.131 while allowing a party to virtually ignore an order under 143.130? We would be living in a bizarre legal world indeed when a losing party, obligated to act under a final order, could escape responsibility and flout the authority of the grievance examiner by doing naught. Then, like Emerson observed in *Plato,* "The longest wave is quickly lost in the sea."

8. The City has perhaps unwittingly proposed that the legislature intended to impose upon Jackson the mythical plight of Sisyphus, punished by the gods, compelled for eternity to roll a large stone to the top of a slope, the stone ever escaping, and rolling down again.

9. The City also argues that even if Jackson met the statutory requirements to bring a claim under 143.134(h), it is "inherently unfair" to assess the taxpayers a large penalty and give him a windfall when he had total control over when he applied for a transfer.

This is not a valid legal argument. Before a fine may be assessed, the statute requires a finding of an *intentional* failure by the department to implement the order. *Id.* If a party can show it was truly *unable* to implement an order (e.g., where no request for a transfer has been made), it likely negates any intent element. However, a different result occurs where a party intentionally refuses to comply with a clear order capable of being implemented. In that case, one should not cast blame on the party with the favorable order, but should perhaps query whether it needlessly imperiled the taxpayers' money by refusing to act in accordance with the order and its own responsibilities.

10. This does not dispense with the issue of whether the City violated section 143.134(h). Intent is an element of this claim, and thus may present fact issues at trial. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986) (intent is a fact issue).

Accordingly, we hold Jackson exhausted his administrative remedies and properly invoked the jurisdiction of the trial court by asserting his claim under section 143.134(h). We overrule the City's issue.

The judgment of the trial court is affirmed.