Opinion issued April 1, 2004



















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00879-CV
__________

THE CITY OF HOUSTON, THE CITY OF HOUSTON FIRE
DEPARTMENT, AND FIRE CHIEF LESTER TYRA, Appellants

V.

ROBERT JACKSON, Appellee

* * * * *

ROBERT JACKSON, Appellant

V.

THE CITY OF HOUSTON, THE CITY OF HOUSTON FIRE
DEPARTMENT, AND FIRE CHIEF LESTER TYRA, Appellees



 
 
On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 98-55144
 

 
 
O P I N I O N
          These appeals arise from the trial court’s judgment awarding the plaintiff
below, Robert Jackson (Jackson), a statutory penalty of $477,000 against the
defendants below, the City of Houston, the City of Houston Fire Department (HFD),
and Fire Chief Lester Tyra (collectively, the City), after a jury found that the Fire
Chief


 had intentionally failed to implement the relief granted to Jackson, a City fire
fighter, by a grievance examiner. See Tex. Loc. Gov’t Code Ann. §§ 143.101–.134
(Vernon 1999 & Supp. 2004).
          In six issues in its appeal, the City contends that (1) the trial court erred in
denying the City’s motion for directed verdict because Jackson presented no evidence
of intent; (2) the City is immune from liability; (3) the penalty provision of section
143.134(h) of the Local Government Code


 violates the equal protection and
reasonable notice provisions of the Texas Constitution and constitutes an “excessive”
fine;


 (4) the trial court erred in denying the City’s motion for directed verdict and
motion for judgment notwithstanding the verdict on the grounds of waiver; (5) the
trial court erred in excluding evidence of Jackson’s “motive” in filing his lawsuit; and
(6) the trial court lacked jurisdiction over Jackson’s lawsuit because he failed to
exhaust his administrative remedies.
          In two issues in his own appeal, Jackson contends that (1) the trial court erred
in rendering judgment concerning the termination date of the statutory penalty and
(2) the evidence was legally and factually insufficient to support the trial court’s
judgment concerning the termination date of the statutory penalty.
          We affirm.
Facts and Procedural Background
          In May 1996, Jackson requested an assignment transfer to HFD station 70. 
However, due to pre-existing ill feelings between Jackson and a fire fighter already
working at station 70, Jackson’s transfer was placed on hold, and later rescinded, by
his superiors. Jackson then filed a grievance concerning the denial of his transfer.
          On November 21, 1996, Yolanda Coroy, a grievance examiner, issued written
findings that upheld HFD’s denial of Jackson’s request to transfer to station 70. 
However, Coroy ordered HFD to “grant a request by [Jackson] [for] a transfer to any
other station, besides station 70, which has an opening available at this time.” Coroy
noted that “it is the responsibility of [Jackson] to apply for a transfer of his choice.” 
Neither HFD nor Jackson appealed the grievance examiner’s findings and decision.
          In November 1998, Jackson filed his petition for declaratory judgment against
the City of Houston, HFD, and the Fire Chief, seeking a declaration that (1) he had
exhausted his administrative remedies regarding his right to a transfer under the
grievance examiner’s November 21, 1996 decision, (2) he was entitled to a voluntary
transfer of his choice, and (3) the City of Houston was required to pay him a statutory
penalty for the Fire Chief’s failure to implement the relief granted to Jackson in the
grievance examiner’s decision.



          At trial, HFD District Chief J. Leggio testified that, in 1996 and 1997, he
routinely reviewed transfer requests as part of his duties as a transfer officer. On
November 21, 1996, Jackson gave Leggio a copy of the grievance examiner’s
decision and requested an immediate transfer to station 11-B. Despite the fact that
Jackson had filed a valid transfer application to station 11-B two days earlier, Leggio
told Jackson that Leggio “interpreted” the grievance examiner’s decision to require
Jackson to submit a new, written application or a “letter” requesting a transfer. To
Leggio’s knowledge, Jackson never submitted such an application. Leggio further
testified that only the Fire Chief could transfer a fire fighter pursuant to a grievance
examiner’s decision.
          City of Houston senior human resources specialist Roland Bienvenu testified
that, at the time of Coroy’s decision, stations 11-B, 21-B, and 82-D had postings for
available openings. The exhibits admitted at trial established that, on November 19,
1996, two days before the grievance examiner issued her decision, Jackson was
transferred by HFD from an EMS assignment at station 18 to “roving” status as an
engineer operator at station 18-D. That same day, Jackson also submitted his request
to transfer from station 18-D to station 11-B. Although, under HFD policy, Jackson’s
request for a transfer to station 11-B was valid until the posting was closed on
November 26, 1996, Jackson was not awarded the transfer to station 11-B.
          In January 1997, Jackson applied for a transfer to an opening at station 70-C. 
Then, in February 1997, Jackson applied for a transfer to an open position at station
72-D. Both of these requests for a transfer were denied.
          Former City of Houston Human Resources Department manager Alice Perrenot
testified that, in March 1997, her office asked Coroy for a “clarification” of her
November 21, 1996 decision. Coroy’s subsequent “Written Clarification of Order”
stated that her earlier decision was intended to allow Jackson “to transfer from his
station to any other station available at that time, except for station 70.” Coroy also
recommended that Jackson be given an additional 60 days from the date of her written
clarification “to apply for a transfer to any station except Station 70 available during
that time period.” Perrenot also testified that, at a meeting of the Civil Service
Commission held on March 27, 1997, the Commission discussed Jackson’s grievance
and Coroy’s clarification of her decision and decided to take no action on the matter. 
Jackson testified that he was never informed of either Coroy’s written clarification
or the Commission’s discussion of the clarification at its March 27, 1997 meeting.
          That same day, Jackson met with Chief Leggio in connection with a grievance
that Jackson had filed concerning the denial of his request for a transfer to station 72-D. Leggio testified that, as a solution for what Jackson perceived to be HFD’s failure
to implement the relief awarded to Jackson by the grievance examiner and to transfer
him to station 11-B, Jackson had requested that he be transferred to station 72-D as
a compromise. Leggio discussed Jackson’s transfer request with Assistant Fire Chief
Swisher, who had been placed in charge of personnel and transfer requests by the Fire
Chief, and, after this discussion, Leggio decided to deny Jackson’s transfer. Leggio
explained that he denied this request based, in part, on his “interpretation” of the
grievance examiner’s decision that Jackson was not entitled to supersede more senior
fire fighters to obtain a transfer to station 72-D because the opening for station 72-D
was not available “at th[e] time” of the grievance examiner’s November 21, 1996
decision. Leggio admitted that, during his March 27, 1997 meeting with Jackson,
Leggio was acting as the Fire Chief’s representative.
          Assistant City of Houston Attorney Cheryl Cash testified that she served as the
legal representative of the Fire Chief in Jackson’s November 1996 grievance
proceeding. Cash explained that, pursuant to the provisions of the statutory grievance
process, the Fire Chief or his designated representative had to attend a grievance
hearing. Cash noted that, at some point in January or February 1997, she was
informed that Jackson had not received a transfer under the grievance examiner’s
decision. Cash also noted that she was not notified of the Commission’s discussion
of the status of Jackson’s grievance at its March 27, 1997 meeting.
          Jackson testified that, at his meeting with Chief Leggio, Leggio did not tell
Jackson that, to receive a transfer to station 11-B, he needed to submit an additional
written transfer request or letter. Jackson explained that he did not file a new transfer
application “[b]ecause I had a transfer request to Station 11 that was still valid at the
time the [grievance examiner’s] order came out.” Moreover, when Jackson was not
given the transfer to station 11-B, he requested a transfer to station 72-D “as a
settlement for the 11-B not being granted to me.” After his request to transfer to 72-D
was denied, Jackson filed a grievance appeal from Leggio’s decision. However,
Jackson filed his appeal one day late, and it was denied by a hearing examiner. 
Following his meeting with Leggio, Jackson applied for transfers to more than a
dozen different stations.
          After hearing the evidence, the jury affirmatively found that Jackson had
applied for a transfer to “any other fire station, besides fire station 70, which had an
opening available on November 21, 1996” and that the Fire Chief had intentionally
failed to implement Jackson’s transfer application from November 21, 1996 until
April 7, 1998. The trial court subsequently rendered judgment for Jackson, awarding
him the right to a voluntary transfer to station 11-B, or any other available station
besides station 70, and $477,000, as a statutory penalty pursuant to section
143.134(h), as well as attorney’s fees, costs, and interest. See Tex. Loc. Gov’t Code
Ann. § 143.134(h) (Vernon 1999).
                                                   The City’s Appeal
Immunity from Suit
          In its sixth issue, the City contends that it is immune from suit because
Jackson’s grievance did not fall within the scope of section 143.134(h). In response,
Jackson argues that this issue was fully addressed in the City’s interlocutory appeal



to our sister court and that we may not reconsider that court’s decision because it is
now the “law of the case.” 
          Under the law of the case doctrine, the decision of a court of last resort on a
question of law will govern a case throughout its subsequent stages. Hudson v.
Wakefield, 711 S.W.2d 628, 630 (Tex. 1986); Harris County v. Walsweer, 930
S.W.2d 659, 663-64 (Tex. App.—Houston [1st Dist.] 1996, writ denied). However,
a decision rendered on an issue before an intermediate appellate court does not
absolutely bar re-consideration of the same issue on a second appeal. Briscoe v.
Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003). The application of the doctrine
lies within the discretion of the court, depending on the particular circumstances
surrounding that case. Id. If an appellate court’s original decision is “clearly
erroneous,” the subsequent court is not required to adhere to the original ruling. Id.
          As it did in its interlocutory appeal, the City argues that Jackson is not entitled
to payment under the penalty provision of section 143.134(h) because the final
decision on Jackson’s grievance was made by a grievance examiner under section
143.130, rather than by the Commission under section 143.131 or a hearing examiner
under section 143.129. Section 143.134(h) provides as follows:
If the decision of the commission under Section 143.131 or the decision
of a hearing examiner under Section 143.129 that has become final is
favorable to a fire fighter, the department head


 shall implement the
relief granted to the fire fighter not later than the 10th day after the date
on which the decision was issued. If the department head intentionally
fails to implement the relief within the 10-day period, the municipality
shall pay the fire fighter $1,000 for each day after the 10-day period that
the decision is not yet implemented.

Tex. Loc. Gov’t Code Ann. § 143.134(h). The City notes that section 143.134(h)
does not explicitly refer to section 143.130 in its imposition of a penalty upon the
department head’s intentional failure to implement the relief awarded to a fire fighter. 
The City also re-urges its argument that Jackson did not exhaust his administrative
remedies and, consequently, could not invoke the jurisdiction of the trial court in his
lawsuit.
          In its consideration of these arguments, the Fourteenth Court of Appeals stated
its holding as follows:
We have thoroughly examined the relevant provisions of the act in
reference to the applicable rules and canons of statutory construction. 
We find that the legislature intended—though did not clearly
articulate—that a final unappealed decision by a grievance examiner
under section 143.130 is a final decision of the commission under
section 143.131. Therefore, when the City failed to timely appeal to the
commission the grievance examiner’s recommended solution ordering
relief to Jackson, the grievance examiner’s recommended solution
became a final decision of the commission. Accordingly, we hold
Jackson exhausted his administrative remedies and properly invoked the
jurisdiction of the trial court by asserting his claim under section
143.134(h).

City of Houston v. Jackson, 42 S.W.3d 316, 322-23 (Tex. App.—Houston [14th Dist.]
2001, pet. dism’d w.o.j.).
          The City argues that, in the exercise of our discretion, we should reconsider
this issue in light of the trial testimony of Alice Perrenot that the Commission never
adopted the grievance examiner’s November 21, 1996 decision because the parties
did not appeal the decision. However, when questioned concerning whether the
Commission had adopted the grievance examiner’s later written clarification,
Perrenot testified that the Commission had not done so and explained that “[t]he
Commission would have to grant it, just like the Commission approved the original
recommendation.”
          Perrenot’s testimony does not change the analysis applied by the Fourteenth
Court of Appeals in considering the intended effect of the statute and in reaching its
holding on this issue. Absent other new evidence or argument that the Fourteenth
Court’s holding in Jackson was “clearly erroneous,” we decline to reconsider this
issue.
          We overrule the City’s sixth issue.
Evidence of Intent
          In its first issue, the City argues that the trial court erred in denying the City’s
motion for a directed verdict because Jackson presented no evidence that the Fire
Chief was aware of and intentionally failed to implement the relief awarded Jackson
by the grievance examiner. The City further argues, in its second issue, that because
there was no evidence that the Fire Chief intentionally failed to implement the
grievance examiner’s decision and because section 143.134(h) provides for a waiver
of the City’s governmental immunity only for intentional acts of the Fire Chief, the
City is immune from liability.
          A trial court may properly grant a motion for directed verdict in favor of a
defendant when a plaintiff fails to present evidence raising a fact issue essential to the
plaintiff’s right of recovery. Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,
29 S.W.3d 74, 77 (Tex. 2000). We review the denial of a motion for directed verdict
in a similar manner as a legal sufficiency challenge. In reviewing a “no evidence”
point, we must view the evidence in the light most favorable to the disputed fact, and
we disregard all evidence and inferences to the contrary. Wal-Mart Stores, Inc. v.
Miller, 102 S.W.3d 706, 709 (Tex. 2003). If more than a scintilla of evidence
supports the finding, the verdict must be upheld. Id.
          The jury found that Jackson had applied for a transfer to “any other fire station,
besides fire station 70, which had an opening available on November 21, 1996” and
that the Fire Chief had “intentionally failed to implement the application.” The City
asserts that there was no evidence that the Fire Chief, himself, even knew of the
grievance examiner’s decision, “let alone intentionally failed to implement it.” It
urges that the actions of the Fire Chief’s subordinate officers “cannot be imputed to
the Fire Chief” and that Jackson should have “simply called the Fire Chief and asked
him what he knew of the award, and if he had intentionally failed to implement it.”
          However, such testimony is not required to prove intent. Intent is generally a
question of fact because it often depends upon the credibility of the witnesses and the
weight to be given to their testimony. See Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 434 (Tex. 1986). The element of intent may be proven by circumstantial
evidence. Id. at 435.
          Here, it is undisputed that Jackson’s November 19, 1996 written request to
transfer to station 11-B was sent to the HFD transfer office and was “valid” at least
until November 26, 1996, when the available position at station 11-B was closed. 
Cash testified that the Fire Chief or his appointed representative attended the
November 1996 hearing on Jackson’s grievance and that, as the legal representative
of the Fire Chief, she received a copy of the grievance examiner’s November 21,
1996 decision. Cash also testified that only the Fire Chief had the authority, acting
on behalf of HFD, to decide whether or not to appeal an examiner’s decision to the
Commission and that HFD did not appeal the examiner’s decision. Chief Leggio
testified that this was the first time in “30 years” that he had ever heard of an
examiner awarding a transfer to a fire fighter. Leggio also testified that only the Fire
Chief had the authority to apply the rulings of grievance examiners and to approve
transfers granted pursuant to a grievance examiner’s decision. Jackson testified that
he was not granted his request to transfer to station 11-B and, as a compromise, he
then requested a transfer to station 72-D. Leggio testified that, acting as the
representative of the Fire Chief, he denied Jackson’s request.
          Based on the record presented, and viewing the evidence in the light most
favorable to Jackson, we hold that (1) the evidence was sufficient to raise a fact
question as to whether the Fire Chief intentionally failed to implement the relief
awarded to Jackson by the grievance examiner and (2) the trial court did not err in
denying the City’s motion for directed verdict on this issue. Accordingly, we further
hold that the City is not immune from liability on the grounds that there was no
evidence that the Fire Chief intentionally failed to implement the relief awarded by
the examiner.
          We overrule the City’s first and second issues.
 
Constitutionality of Statute
          In its third issue, the City contends that the trial court erred in denying the
City’s motion for judgment notwithstanding the verdict on the grounds that section
143.134(h) violates the Texas Constitution. The City argues that section 143.134(h)
is unconstitutional because (1) it amounts to an “excessive fine” contrary to the
provisions of Article I, section 13;


 (2) the caption of section 143.134 gives no notice
of a penalty, contrary to Article III, section 35;


 and (3) its application results in
unequal treatment of the Fire Chief compared to other department heads, contrary to
the Equal Protection Clause of Article I, section 3.



          In response, Jackson initially argues that the City, as a government entity, lacks
standing to assert constitutional due process or equal protection claims. However, the
Texas Supreme Court has recognized the right of government entities to assert such
claims. See Wilson v. Andrews, 10 S.W.3d 663, 669 (Tex. 1999) (addressing merits
of City of Lubbock’s due process and equal protection claims concerning certain
provisions of Local Government Code). The constitutional demands of standing
require the existence of a real controversy between the parties that would actually be
resolved by the judicial declaration sought. Id. (citing Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)). In Wilson, the Texas Supreme Court
addressed the merits of a municipality’s constitutional challenge to a provision of the
Local Government Code after holding that the municipality had standing to raise such
claims. 10 S.W.3d at 669 (“Because Lubbock has standing to bring its claims, we
assume without deciding that government entities can raise due process and equal
protection challenges and confront the merits of its constitutional challenges.”).
          Here, there is no dispute that a real controversy exists between the City and
Jackson that would be resolved by a declaration that section 143.134(h) was
unconstitutional. Therefore, because the City has standing to assert its claims, we
assume without deciding that the City may raise its constitutional clams, and we
address the merits of each of the City’s arguments in turn.



          In regard to the City’s argument that section 143.134(h) constitutes an
unconstitutional, excessive fine, we note that Article I, section 13 provides,
“Excessive bail shall not be required, nor excessive fines imposed, nor cruel or
unusual punishment inflicted.” Tex. Const. art. I, § 13. The term “fines” has been
defined as including civil penalties. See Pennington v. Singleton, 606 S.W.2d 682,
690 (Tex. 1980).
          Generally, prescribing fines is a matter within the discretion of the legislature. 
A fine is not unconstitutionally excessive, and courts may not override the
legislature’s discretion, “except in extraordinary cases, where it becomes so
manifestly violative of the constitutional inhibition as to shock the sense of mankind.”
 Id. (quoting State v. Laredo Ice Co., 73 S.W. 951, 953 (Tex. 1903)). In Pennington,
the court considered the constitutionality of the treble damages provision of the
Deceptive Trade Practices–Consumer Protection Act (DTPA)


 and noted that one of
the legitimate “purpose[s] of [imposing] liability in excess of actual damages is to
deter violations of the Act.” Id., 606 S.W.2d at 690.
          The City argues that the penalty provision of section 143.134(h) is
unconstitutional because it does not require any showing of actual harm, but is
instead automatically triggered. Although the penalty provision of section 143.134(h)
was not designed to compensate a fire fighter for any actual damages sustained in not
obtaining the specific relief awarded in a grievance proceeding, it is apparent that the
provision was intended to deter a Fire Chief’s intentional failure to implement such
relief and to encourage compliance with the final decisions of grievance
proceedings.


 We hold that, as with the treble damage provisions of the DTPA,
deterrence of wrongful conduct is a legitimate purpose of the statutory penalty
imposed by section 143.134(h). See Pennington, 606 S.W.2d at 690. In the present
case, the amount of the penalty imposed, while significant, is directly proportional to
the period of time that the jury found had elapsed between the grievance examiner’s
decision and the implementation of the relief awarded to Jackson due to the Fire
Chief’s intentional failure to implement the relief.
          Accordingly, we hold that section 143.134(h) does not violate the Texas
Constitution’s prohibition against excessive fines and was not unconstitutionally
applied in this case.
          Regarding the City’s argument that section 143.134 gives no notice in its title
of its penalty provision, the Texas Constitution does require that “the subject of each
bill be expressed in its title in a manner that gives the legislature and the public
reasonable notice of that subject.” Tex. Const. art. III, § 35(b). However, in 1986,
this section of the constitution was amended to provide that “[t]he legislature is solely
responsible for determining compliance with the rule” and that “a law . . . may not be
held void on the basis of an insufficient title.” Id. § 35(b), (c).
          Thus, as the Texas Supreme Court has held, “laws will no longer be struck
down because of a deficiency in title, no matter how egregious.” Ford Motor Co. v.
Sheldon, 22 S.W.3d 444, 452 (Tex. 2000). Accordingly, we decline to hold section
143.134(h) unconstitutional because of any deficiency in its title.
          As to the City’s argument that section 143.134(h) violates the principles of
equal protection, the Texas Constitution guarantees that “All free men, when they
form a social compact, have equal rights, and no man, or set of men, is entitled to
exclusive public emoluments, or privileges, but in consideration of public service.” 
Tex. Const. art. I, § 3. As this Court has previously held, “[e]qual protection
requires that similarly situated individuals be treated in the same manner.” Farris v.
Fort Bend I.S.D., 27 S.W.3d 307, 311 (Tex. App.—Houston [1st Dist.] 2000, no pet.).
          The relevant provisions of the Local Government Code were enacted to apply
only to municipalities in Texas that have a population of 1.5 million or greater, such
as Houston. Tex. Loc. Gov’t Code Ann. § 143.101(a) (Vernon 1999). The City
argues that, because the penalty provision of section 143.134(h) is “targeted only
against the Fire Chief in the City of Houston” and against no other public servant, the
provision is a violation of the City’s constitutional right of equal protection. The
Texas Supreme Court, in setting forth the proper analysis to be applied when
considering whether a statutory classification violates the Texas Constitution’s equal
protection guarantee, has held that, “[w]here the classification does not impinge on
a fundamental right, or distinguish between persons on a suspect basis such as race
or national origin, it is valid as long as it is rationally related to a legitimate state
purpose.” Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 451 (Tex. 2000) (quoting
Trinity River Auth. v. URS Consultants, Inc., 889 S.W.2d 259, 264 (Tex. 1994)). 
          Here, the City does not contend that section 143.134(h) violates a “fundamental
right” of the Chief, nor does it contend that the Chief, by virtue of his position, is a
member of a suspect class. Moreover, it is apparent that section 143.134(h) is
rationally related to a legitimate state purpose; it imposes a penalty to be paid by the
City, only under certain circumstances, to punish the wrongful conduct of the Fire
Chief in refusing to implement the relief granted to a fire fighter in a grievance
proceeding. With regard to that class of “similarly situated persons” that the statute
is actually designed to protect, namely, HFD fire fighters, the statute applies equally
and does not distinguish between persons on a suspect basis. Accordingly, we hold
that section 143.134(h) does not violate the equal protection provision of the Texas
Constitution.
          We overrule the City’s third issue.
 
Waiver
          In its fourth issue, the City contends that the trial court erred in “refusing to
grant judgment to the City because Jackson had waived his statutory rights, if any
existed, to any award.” Absent any reference by the City to any specific ruling of the
trial court, we consider this contention a challenge to the trial court’s denial of the
City’s motion for directed verdict on the grounds of Jackson’s alleged waiver.
          As noted above, a trial court may properly grant a motion for directed verdict
in favor of a defendant when a plaintiff fails to present evidence raising a fact issue
essential to the plaintiff’s right of recovery. Prudential Ins. Co. of Am., 29 S.W.3d
at 77. Therefore, we view the evidence in a light that tends to support the finding of
a disputed fact and disregard all evidence and inferences to the contrary. Miller, 102
S.W.3d at 709. If more than a scintilla of evidence supports the finding, the verdict
must be upheld. Id.
          Waiver is an affirmative defense and is proven by showing a party’s
“intentional relinquishment of a known right or intentional conduct inconsistent with
claiming that right.” Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex. 2003) (quoting
Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987)); Robinson
v. Robinson, 961 S.W.2d 292, 299 (Tex. App.—Houston [1st Dist.] 1997, no writ). 
In determining if a waiver has in fact occurred, a court must examine the acts, words,
or conduct of the parties, and it must be “unequivocally manifested” that it is the
intent of the party to no longer assert its right. Robinson, 961 S.W.2d at 299. 
Estoppel by silence will operate when a claimant has a duty to speak. Williams v.
Stansbury, 649 S.W.2d 293, 296 (Tex. 1983).
          Here, Jackson testified that, at the time of the grievance examiner’s November
21, 1996 decision, he had on file a “valid” application requesting a transfer to station
11-B. Jackson explained that, because his transfer form was effective until November
26, 1996, he did not file a second request. After he did not receive a transfer to
station 11-B, he discussed his request for a transfer to station 72-D with Chief Leggio
as a “compromise.” Leggio corroborated this testimony. After Leggio denied
Jackson’s request for a transfer to station 72-D, Jackson filed an untimely grievance
appeal from Leggio’s decision. Jackson subsequently applied for transfers to more
than 12 stations.
          Based on the record presented, we hold that the evidence was sufficient to raise
a fact question concerning whether Jackson had ever “unequivocally manifested” his
intent to relinquish his right to a transfer under the grievance examiner’s November
21, 1996 decision. Accordingly, we hold that the trial court did not err in denying the
City’s motion for directed verdict on this issue.
          We overrule the City’s fourth issue.
Evidence of Request for Payment
          In its fifth issue, the City contends that the trial court erred in excluding a
September 18, 1998 letter that Jackson had sent to HFD because it showed “that
Jackson was seeking a windfall of hundreds of thousands of dollars, and not merely
a transfer.” In the letter, Jackson, referring to the grievance examiner’s November 21,
1996 decision, accused HFD of intentionally failing to implement the relief granted
by the grievance examiner. In the letter, Jackson requested that HFD grant him a
transfer to station 93-D and pay him $798,000


 in accordance with the provisions of
section 143.134(h). The City argues that such evidence was relevant because it
constituted “information related to Jackson’s motives and the actual recovery he was
seeking at trial.” In contrast, Jackson contends that evidence of the actual amount of
the statutory penalty was irrelevant to the pertinent questions of fact before the jury.
          We review a trial court’s decision to exclude evidence under an abuse of
discretion standard. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995); Standard Constructors, Inc. v. Chevron Chem. Co., 101 S.W.3d 619, 626
(Tex. App.—Houston [1st Dist.] 2003, pet. denied). A trial court abuses its discretion
only when it acts in an unreasonable and arbitrary manner or when it acts without
reference to any guiding rules or principles. E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 558 (Tex. 1995); Standard Constructors, 101 S.W.3d at
626. This Court may not reverse a trial court’s ruling for an abuse of discretion
merely because we disagree with its decision. See Robinson, 923 S.W.2d at 558;
Standard Constructors, 101 S.W.3d at 626. “Relevant evidence” is defined as
“evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than
it would be without the evidence.” Tex. R. Evid. 401.
          Here, the jury was required to resolve the following questions of fact:
(1) whether Jackson had received a final, favorable decision as a result of his
grievance; (2) whether the relief granted had been implemented after the decision was
issued; (3) whether the Fire Chief had intentionally failed to implement the relief; and
(4) when the relief had been implemented, if at all. The jury’s resolution of these
issues was determinative of whether the City was obligated to pay Jackson the
statutory penalty. However, to determine the amount of the payment, the trial court
merely had to count the number of days from the date of the favorable decision to the
date that relief was finally implemented and to multiply that number by one thousand. 
The answer to this simple, mathematical calculation was not “of consequence to the
determination of the action.”
          In its reply brief, the City further argues that the letter was admissible, under
Rule 404(b),


 as proof of Jackson’s “motives” in filing his lawsuit. However, on its
face, Jackson’s letter merely stated his belief that he was legally entitled to a remedy
under section 143.134(h). Because the actual amount of the statutory penalty was not
of consequence to the trial court’s determination of the action, and because Jackson’s
letter does not, on its face, manifest Jackson’s “true motive in bringing” this action,
we cannot conclude that the trial court abused its discretion in excluding the
September 18, 1998 letter and testimony concerning its contents.
          We overrule the City’s fifth issue.
Jackson’s Appeal
Trial Court’s Judgment
          In his first issue, Jackson contends that the trial court erred in rendering its
judgment concerning the termination date of the statutory penalty. In its answers to
questions 1 and 2, the jury found that Jackson had applied for a transfer to a fire
station, other than station 70, that had an opening available at the time of the
grievance examiner’s decision and that the Fire Chief had intentionally failed to
implement Jackson’s transfer application. In its answer to question 3, the jury found
that “the Fire Chief intentionally fail[ed] to implement [Jackson’s] application for a
transfer” from November 21, 1996 to April 7, 1998. Accordingly, in its judgment,
the trial court ruled that the period of time for which Jackson was entitled to a
statutory penalty terminated on April 7, 1998.
          A trial court may disregard a jury finding only if it should not have been
submitted or it is immaterial. Southeastern Pipe Line Co. v. Tichacek, 997 S.W.2d
166, 172 (Tex. 1999). A jury finding is immaterial when the question to which the
finding responds should not have been submitted, calls for a finding beyond the
province of the jury, such as a question of law, or was properly submitted, but the
jury’s answers to other questions render the finding meaningless. Id.
          Jackson contends that question 3 was erroneously phrased and did not track the
requirements of the statute and that the trial court erred in basing its judgment
concerning the termination date of the statutory penalty on the jury’s answer. Section
143.134(h) reads, in part, as follows: “If the department head intentionally fails to
implement the relief . . . the municipality shall pay the fire fighter $1,000 for each day
. . . that the decision is not yet implemented.” Tex. Loc. Gov’t Code Ann. §
143.134(h). Jackson argues that “[t]he plain meaning of § 143.134(h) is that once a
firefighter shows that the fire chief intentionally failed to implement a final order, the
penalty will continue until the order is implemented, not for as long as the intent
continues.” Jackson asserts that question 3 erroneously permitted the jury to base its
finding concerning the termination date of the statutory penalty on a determination
of when the Fire Chief no longer intended to deny relief to Jackson, rather than when
the relief awarded to Jackson was actually implemented.
          However, Jackson did not object to the wording of question 3 or to its
submission to the jury. To preserve most complaints premised on the jury charge for
appellate review, a party must present to the trial court a timely request, motion, or
objection, state the specific ground, and obtain a ruling. Tex. R. App. P. 33.1(a); In
re B.L.D., 113 S.W.3d 340, 349 (Tex. 2003). By not objecting to the submission or
wording of question 3, Jackson waived any complaint on appeal concerning this
question, and he cannot now contend that the trial court erred in basing its judgment
on the jury’s answer to the question. See Tex. R. App. P. 33.1.
          We overrule Jackson’s first issue.
Sufficiency of the Evidence
          In his second issue, Jackson contends that the evidence was legally and
factually insufficient to support the jury’s finding, in its answer to question 3, that the
period of time for which Jackson was entitled to a statutory penalty ended on April
7, 1998. As noted above, we address Jackson’s “no evidence” point by reviewing the
evidence in a light most favorable to the finding of disputed fact and disregarding all
evidence and inferences to the contrary. Miller, 102 S.W.3d at 709. If more than a
scintilla of evidence supports the jury’s finding, the verdict must be upheld. Id.
          Here, the City offered into evidence, as exhibits 5K and 5L, two personnel
transfer forms. Exhibit 5K is dated March 26, 1998 and indicates that, effective April
7, 1998, Jackson was to be transferred from his position at station 18-D to a position
at station 82 and that this transfer was instituted because of “[a]ny other specified
reason the Fire Chief deems necessary.” In its explanation section, exhibit 5K reads,
in part, as follows:
START EMT ASSIGN. PAY EFF. 04-07-98. WILL RETURN ON 04-07-98 AT 0630 HRS. WILL BE ASSIGNED TO THE AMB. WILL
RETURN TO STA. 48 UPON RESTORATION. MEMBER HAS
BEEN IN A ROVING POSITION SINCE 11-19-96. DUE TO THE
NUMBER OF E/O OPENINGS, THERE IS NO NEED TO ROVE
E/O’S. MEMBER WAS OFFERED 8 POSITIONS TO CHOOSE
FROM ON 03-24-98. MEMBER CHOSE 48-D (AT 82’S). THIS
WILL BE AN ADM. TRANSFER. MEMBER MAY USE SENIORITY
TO OBTAIN OTHER TRANSFER PER TRANSFER POLICY . . . .

          The transfer form admitted as exhibit 5L is dated April 1, 1998 and indicates
that, also effective April 7, 1998, Jackson was to be transferred from station 82 to
station 48 and that this transfer was instituted as “[a] result of a mutual agreement
between the Fire Chief and [Jackson].” In its explanation section, exhibit 5L reads
as follows:
STATION 48 REOPENED ON 04/07/98. CREW AND EQUIPMENT
WILL RETURN TO STATION 48. MEMBER WILL REPORT FOR
DUTY ON 04/07/98.

          At trial, Jackson objected to the admission of these exhibits as irrelevant and
“not probative to any issue for which they [were] offered.” In response, the City
asserted that the exhibits were offered “for the purpose of showing the fact that Mr.
Jackson put in for some transfers, or there were some transfers—it goes to the issue
of whether in fact—the department never gave him the transfer that he wished to
have, that continuing objection made by Mr. Jackson.” The trial court overruled
Jackson’s objection, admitted the exhibits, and placed no limitations on their use.
          Jackson argues that we must disregard exhibits 5K and 5L in our legal
sufficiency review of the evidence supporting the jury’s answer to question 3 because
(1) the trial court erred in admitting the exhibits; (2) the exhibits were offered for the
“limited” purpose of merely showing that Jackson had received a transfer; and (3) the
trial court “sustained all of Jackson’s objections” to the City’s attempts to offer the
exhibits as evidence that the Fire Chief intended to give Jackson a transfer to station
48 as a substitute for the relief awarded to him by the grievance examiner. We
disagree. First, although Jackson argues that exhibits 5K and 5L were not relevant
because he did not ask for or agree to the transfer to station 48 and did not participate
in the preparation of the exhibits, such arguments go to the weight to be given the
exhibits and not to their relevance or admissibility. Second, the record indicates that
the trial court placed no limitations on the City’s use of exhibits 5K and 5L and that
the City’s stated purpose for offering the exhibits went to an issue at the heart of
Jackson’s case—whether the Fire Chief ever implemented the relief awarded by the
grievance examiner by transferring Jackson to the station of his choice. Finally, the
record indicates that the trial court sustained Jackson’s earlier objections to exhibits
5K and 5L only on the grounds that the City had failed to authenticate the documents
as business records.


 Accordingly, we will consider exhibits 5K and 5L in our legal
sufficiency review.
          Viewing the evidence in the light most favorable to the jury finding, exhibit 5K
indicates that, after having been given eight positions from which to choose, Jackson
chose to be transferred to station 48. Exhibit 5L indicates that the transfer was
instituted as a “result of a mutual agreement” between Jackson and the Fire Chief and
was to take effect on April 7, 1998. We hold that exhibits 5K and 5L constitute more
than a scintilla of evidence to support the jury’s finding that the period of time for
which Jackson was entitled to a statutory penalty due to the Fire Chief’s failure to
implement the relief awarded to Jackson by the grievance examiner terminated on
April 7, 1998. Accordingly, we hold that the evidence was legally sufficient to
support the jury’s answer to question 3.
          In reviewing Jackson’s challenge to the factual sufficiency of the evidence, we
consider all the evidence supporting and contradicting the finding, and we may set
aside the verdict only if the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).
          In support of his argument that the evidence was factually insufficient to
support the jury’s answer to question 3, Jackson relies on his own testimony that he
did not ask for or agree to a transfer to the stations indicated on exhibits 5K and 5L. 
He also relies on testimony elicited from Rosemary Radcliffe, an employee of HFD’s
transfer office, that Jackson was not present at the time that exhibits 5K and 5L were
prepared. Radcliffe explained that exhibits 5K and 5L were not transfer request
forms, but were administrative forms used to memorialize and to notify all relevant
parties of action taken on transfers, whether requested by a fire fighter or unilaterally
ordered by the Fire Chief.
          However, a jury’s resolution of conflicting testimony and evidence against a
party does not make the jury’s finding “clearly wrong and unjust.” See id. As the fact
finder, the jury was entitled to judge the credibility of the witnesses and to determine
what weight to give to their testimony. Id. Here, the jury apparently chose to believe
the contents of exhibits 5K and 5L, and not Jackson’s testimony, concerning whether
and when HFD implemented the relief awarded to Jackson by transferring him to a
station of his choice. Based on the record presented, we hold that the jury’s finding
in question 3 that the period of time for which the City owed Jackson a statutory
penalty terminated on April 7, 1998 was not “so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.” Id.
          We overrule Jackson’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 


                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.